Richard D. Monkman
Samuel E. Ennis
Sonosky, Chambers, Sachse,
  Miller & Munson, LLP
302 Gold St., Suite 201
Juneau, Alaska 99801
Telephone:    907.586.5880
Facsimile:    907.586.5883

Michael F. Madden
Bennett Bigelow & Leedom, P.S.
601 Union Street, Suite 1500
Seattle, Washington 98101
Telephone:    206.622.5511
Facsimile:    206.622.8986

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA NATIVE TRIBAL HEALTH CONSORTIUM and SOUTHCENTRAL FOUNDATION,<br><br>Plaintiffs,<br><br>vs.<br><br>PREMERA BLUE CROSS, d/b/a PREMERA BLUE CROSS BLUE SHIELD OF WASHINGTON AND ALASKA<br><br>Defendant. | Case Nos.<br>3:12-cv-00065-HRH and<br>3:12-cv-00165-RRB<br>(Consolidated) |

**AFFIDAVIT OF PAUL A. ADAMS**

I, PAUL A. ADAMS, state and affirm as follows:

AFFIDAVIT OF PAUL A. ADAMS
*ANTHC v. PREMERA BLUE CROSS*
Case Nos. 3:12-cv-00065-HRH and
3:12-cv-00165-RRB (Consolidated)

Page 1 of 10

1. I am a Director within the Healthcare Consulting Group at Moss Adams, LLP ("Moss Adams") and have worked in the healthcare industry for the past 33 years. Moss Adams has been retained by the Alaska Native Tribal Health Consortium ("ANTHC") to provide litigation support and expert testimony in this matter. A copy of my curriculum vitae is found at Docket 79-2.

2. In preparation for this declaration, our firm was asked to review the payments made by third parties to ANTHC for health services. For purposes of this analysis, our firm attempted to use the same Explanation of Benefits ("EOB") examples that Premera's expert, Mr. Menenberg, used in his "Supplemental Expert Report" dated July 17, 2014. These were the EOB documents produced to Premera by ANTHC on May 7, 2014.

3. The EOBs we reviewed were a sample of the roughly 83,000 EOBs produced by ANTHC. Following Premera's expert's selections, our firm reviewed each EOB with a Bates Number ending in 00. These should represent the same EOBs that Premera's expert reviewed. Premera's expert described this as a "methodology [that] ensured uniform coverage over the entire set of EOB documents that had been provided, and a robust dataset." Our firm manually entered the data from the "00" EOBs selected

AFFIDAVIT OF PAUL A. ADAMS
*ANTHC v. PREMERA BLUE CROSS*
Case Nos. 3:12-cv-00065-HRH and
3:12-cv-00165-RRB (Consolidated)
Page 2 of 10

Case 3:12-cv-00065-HRH   Document 134-10   Filed 09/18/14   Page 2 of 11   EX. 9 Page 2 of 11

by Premera's expert into a sortable spreadsheet. We removed from this data set claims that were denied entirely. We also removed from this data set all duplicate claims, claims where information was requested without payment, claims that were retracted by the health plan, claims processed as secondary to the primary payor, Workers' Compensation, where the entire amount was applied to the deductible/coinsurance, adjustment claims where the original payment was appended with additional payment, and claims for employees of ANTHC paid through self-insurance processing by UMR their claims administrator.

4. There were important differences between our analysis and Premera's analysis. Premera's expert without explanation "remove[d] any claims in the database that related to services provided to patients covered by Premera, Medicare and Workers' Compensation," and also without explanation, "remove[d] any claims for physician services." Our firm's analysis also excluded Medicare and Worker's Compensation claims, but included claims paid by Premera's Federal Employee Health Benefits (FEHB) policies, and claims for physician services.

5. The reasons are these. First, Premera's FEHB program is a private, competitive, commercial third party plan.

AFFIDAVIT OF PAUL A. ADAMS
ANTHC v. PREMERA BLUE CROSS
Case Nos. 3:12-cv-00065-HRH and
3:12-cv-00165-RRB (Consolidated)

Page 3 of 10

Participating individuals and their employers pay premiums to a national Blue Cross Blue Shield FEHB, and Premera, as the local Blue Cross provider, makes payments to health care providers in its area. The FEHB program relies on consumer choices among competing private plans to determine costs, premiums, benefits, and service. The FEHB claims did not fall under the 2001 Premera/ANTHC contract. As such, the FEHB claims/EOB's clearly fall under the category of "third-party" EOB's and are consistent with the judge's order and should be used as a basis for comparison. Based on our firm's review of the EOBs, Premera FEHB has consistently paid, and continues to pay, much higher rates than Premera BCBS pays ANTHC on its claims. Excluding these claims incorrectly skews the payment rate numbers downward.

6. Second, ANTHC employs its physicians. It is entitled to file claims and be compensated for its employed physicians' services. Physician services claims are billed under ANTHC's provider numbers, are paid by Premera and were part of Premera's own data set. Excluding these claims incorrectly skews the payment rate numbers downward.

AFFIDAVIT OF PAUL A. ADAMS
ANTHC v. PREMERA BLUE CROSS
Case Nos. 3:12-cv-00065-HRH and
3:12-cv-00165-RRB (Consolidated)    Page 4 of 10

Case 3:12-cv-00065-HRH   Document 134-10   Filed 09/18/14   Page 4 of 11   EX. 9 Page 4 of 11

7. An accurate and complete analysis of payment rates requires that Premera FEHB and physician services claims be included in the calculations.

8. Our firm's analysis of the EOB data also included separating the claims by whether or not the paying insurance carrier had a contract with ANTHC. Carriers with a contract pay specifically negotiated rates, which in almost all cases are lower than 100% of billed charges. This does not mean that the provider's billed charges are "unreasonable," it simply means that the parties have negotiated an arrangement that they find mutually beneficial for any number of reasons. Among the reasons that health care providers accept lower contract rates is in exchange for certainty of payment and predictability, for administrative convenience, and to allow for more patients to have access to their services.

9. Premera has not had a contract with ANTHC since 2011. We compared Premera's payments from the claims and payment data Premera produced in discovery to the payment data from similar non-contracted insurance carriers and administrators, as shown on Premera's expert's selected EOBs. We determined that the largest payors overall were the defendant, Premera Blue Cross

AFFIDAVIT OF PAUL A. ADAMS
ANTHC v. PREMERA BLUE CROSS
Case Nos. 3:12-cv-00065-HRH and
3:12-cv-00165-RRB (Consolidated)

Page 5 of 10

Case 3:12-cv-00065-HRH   Document 134-10   Filed 09/18/14   Page 9 of 11   EX. 9 Page 5 of 11

Blue Shield (22.8%), Premera Federal Employees Health Benefit Plan (9.89%), Meritain (12.27%), Aetna US (10.8%) and the State of Alaska's AlaskaCare health plan, which has been administered by a variety of health insurance companies in the past several years (13.24%). Together these payors make approximately 70% of payments to ANTHC. Of these, the main non-contracted payors are Premera Blue Cross Blue Shield, Premera Federal Employees Health Benefit Plan, Meritain and AlaskaCare.

10. The rest of ANTHC's non-Medicaid/Medicare payments in the "00" EOBs are from approximately 150 small individual employer and union plans, which appear to have a wide and highly variable range of policy limits and payment provisions, and are not comparable either in market percentage or plan structure to ANTHC's major insurance payors. And, based on the "00" EOBs, two-thirds (66%) of the AlaskaCare payments are secondary, "Medigap" payments for retirees. These payments cover about 20% of each such claim – i.e., the small portion not paid by Medicare – and thus are not comparable to primary coverage payments by commercial insurance payors.

11. Our firm noted anomalies when reviewing the EOBs selected by Premera's expert. We discovered many non-Premera

AFFIDAVIT OF PAUL A. ADAMS
*ANTHC v. PREMERA BLUE CROSS*
Case Nos. 3:12-cv-00065-HRH and
3:12-cv-00165-RRB (Consolidated)

Page 6 of 10

Case 3:12-cv-00065-HRH   Document 134-10   Filed 09/18/14   Page 6 of 11   EX. 9 Page 6 of 11

EOBs underreported the amounts ANTHC should have received, both from contracted and non-contracted payors. Our investigation found that the ANTHC billing office was unaware of these underpayments and thus did not intentionally accept these underpayments. We found that ANTHC's billing process is not yet as robust as most private, nonprofit hospitals. We understand from ANTHC that this is for historical reasons, *i.e.*, that as a formerly federally-operated hospital ANMC did not develop effective billing and claim management systems until recently. ANTHC has now embarked on an ambitious effort to rectify this problem and collect what is due. Our firm expects that with better attention to this issue, ANTHC's payment rates will increase.

12. We compared the "billed to allowed" and "billed to paid" ratios of Premera's payment data against non-contracted payments of Cigna, Premera FEHB, and Meritain as shown in the "00" EOBs. We are still analyzing the State of Alaska's health plan data, which is difficult to assess due to that plan's multiple changes of administrators and plan names. The "00" EOBs selected by Premera's expert contain both in-patient and out-patient charges, and thus our analysis (and Premera's expert's) examines the overall ratios.

AFFIDAVIT OF PAUL A. ADAMS
*ANTHC v. PREMERA BLUE CROSS*
Case Nos. 3:12-cv-00065-HRH and
3:12-cv-00165-RRB (Consolidated)

Page 7 of 10

13. Our analysis of the "00" EOB sample determined that Premera's "billed to allowed" ratio is the lowest of ANTHC's major commercial payors for non-contracted claims. Cigna "allows" 100% of ANTHC's billed charges. Premera FEHB "allows" 94% of ANTHC's billed charges. Meritain "allows" 100% of ANTHC's billed charges. Premera BCBS, by contrast, only "allowed" 72% of ANTHC's billed charges in the sample EOBs.

14. This is a significant deviation from "allowed" market rates for non-contracted services. The "allowed" charge is a strong indicator of what the insurance company or plan administrator considers a reasonable charge for the service rendered or equipment provided. The "allowed" amount provides the base figure that the payor uses to calculate the final payment, after adjustments for patient cost-sharing, stop-loss and other deductions. Premera's 72% "allowed" amount is substantially below other market participants': it is only two-thirds of Cigna's and Meritain's allowed amounts for their non-contracted plans, and only three-quarters of Premera FEHB's allowed amounts.

15. Similarly, our analysis determined that Premera's "billed to paid" ratio is the lowest of ANTHC's major payors.

AFFIDAVIT OF PAUL A. ADAMS
*ANTHC v. PREMERA BLUE CROSS*
Case Nos. 3:12-cv-00065-HRH and
3:12-cv-00165-RRB (Consolidated)                    Page 8 of 10

Case 3:12-cv-00065-HRH   Document 134-10   Filed 09/18/14   Page 9 of 11   EX. 9 Page 8 of 11

This is the net payment to ANTHC after adjustment for "allowed amount," policy limits and cost-sharing. For non-contracted claims Cigna pays 98% of ANTHC's billed charges, Premera FEHB pays 86% of ANTHC's billed charges, Meritain pays 67% of ANTHC's billed charges. Premera, by contrast, only pays 47% of ANTHC's billed charges.

16. This is a significant deviation from market payment rates for non-contracted services. Premera pays ANTHC less than half of what Cigna pays, and slightly under half of what its own Federal Employees Benefit Plan pays to ANTHC. Premera pays only about two-thirds of what Meritain pays to ANTHC.

17. Attached are charts illustrating the "billed to allowed" and "billed to paid" ratios we established using Premera's data production in this matter and using the "00" EOBs selected by Premera's expert.

///

AFFIDAVIT OF PAUL A. ADAMS
*ANTHC v. PREMERA BLUE CROSS*
Case Nos. 3:12-cv-00065-HRH and
3:12-cv-00165-RRB (Consolidated)                         Page 9 of 10

Case 3:12-cv-00065-HRH   Document 134-10   Filed 09/18/14   Page 9 of 11

DATED September 16, 2014, at Irvine, California.

*See attached*

Paul A. Adams

Subscribed and sworn *to (or Affirmed)* before me on the date and at the place above listed.

_____     (SEAL)
Notary Public
State of California


Certificate of Service

I certify that on September 18, 2014, a copy of the foregoing document was served by ECF on:

Gwendolyn Payton
paytong@lanepowell.com

John Neeleman
neelemanj@lanepowell.com

Michael B. Baylous
baylousm@lanepowell.com

*/s/ Richard D. Monkman*
_____
Richard D. Monkman


AFFIDAVIT OF PAUL A. ADAMS
*ANTHC v. PREMERA BLUE CROSS*
Case Nos. 3:12-cv-00065-HRH and
3:12-cv-00165-RRB (Consolidated)

Page 10 of 10

# CALIFORNIA JURAT WITH AFFIANT STATEMENT

☑ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–5 to be completed only by document signer[s], *not* Notary)

1. ~~_____~~
2. ~~_____~~
3. ~~_____~~
4. ~~_____~~
5. ~~_____~~
6. ~~_____~~

Signature of Document Signer No. 1            Signature of Document Signer No. 2 (if any)

State of California

County of __Orange__

Subscribed and sworn to (or affirmed) before me on this __16th__ day of __September__, 20__14__, by

(1) __Paul Andrew Adams__,
Name of Signer

proved to me on the basis of satisfactory evidence to be the person who appeared before me (.)~~☒~~

(and

(2) ~~_____~~,
Name of Signer

proved to me on the basis of satisfactory evidence to be the person who appeared before me.)

Signature __Susie Rosas O'Ca__
Signature of Notary Public

[Notary Seal: SUSIE ROSAS O'CAMPO, COMM. # 2068989, NOTARY PUBLIC • CALIFORNIA, ORANGE COUNTY, Comm. Exp. JUNE 16, 2018]

Place Notary Seal Above

─── **OPTIONAL** ───

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Further Description of Any Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: __10__

Signer(s) Other Than Named Above: __None__

RIGHT THUMBPRINT OF SIGNER #1 — Top of thumb here
RIGHT THUMBPRINT OF SIGNER #2 — Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org  Item #5910  Reorder: Call Toll-Free 1-800-876-6827