IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA NATIVE TRIBAL HEALTH CONSORTIUM,<br><br>               Plaintiff,<br><br>  vs.<br><br>PREMERA BLUE CROSS,<br><br>               Defendant.<br><br>SOUTHCENTRAL FOUNDATION,<br><br>               Plaintiff,<br><br>  vs.<br><br>PREMERA BLUE CROSS,<br><br>               Defendant. | No. 3:12-cv-0065-HRH<br>(Consolidated with<br>No. 3:12-cv-0165-HRH) |

O R D E R

<u>Cross-Motions for Partial Summary Judgment</u>

Plaintiff Alaska Native Tribal Health Consortium (ANTHC) moves for partial summary judgment.[1] This motion is opposed and defendant cross moves for partial summary judgment.[2] The cross-motion is opposed.[3] Defendant also moves, pursuant to

---

[1] Docket No. 78. In this consolidated action Southcentral Foundation is also a plaintiff. Although the memorandum in support of the motion for partial summary judgment is labeled "plaintiffs' memorandum," all of the references therein are to plaintiff ANTHC. Thus, for purposes of this order, any reference to "plaintiff" means ANTHC.

[2] Docket No. 98.

[3] Docket No. 113.

Local Rule 7.1, to submit supplemental factual information.[4] This motion is opposed,[5] and plaintiff moves to strike defendants' Rule 7.1(i)(2) pleadings.[6] The motion to strike is opposed.[7] Oral argument has been heard.

## Facts

Plaintiff is a tribal organization that provides health care services to Alaska Natives, American Indians, and other eligible individuals pursuant to Titles I and V of the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 450f-450n, 458aaa-458aaa-18; the Alaska Tribal Health Compact; and plaintiff's Funding Agreement with the Secretary of Health and Human Services. Plaintiff co-manages the Alaska Native Medical Center (ANMC) in Anchorage, Alaska, under this authority. Alaska Natives and American Indians who receive health care services at ANMC are not personally responsible for paying costs associated with their care.

Defendant is Premera Blue Cross. Defendant provides health insurance to some of the individuals (sometimes referred to herein as "insureds" or "members") who obtain health care services at ANMC. From 2001 through 2011, plaintiff and defendant had a contract which provided the rates which defendant agreed to pay for the health care services that plaintiff provided to defendant's insureds. That contract was terminated by plaintiff April 15, 2011, as a consequence of a dispute between the parties over plaintiff's use of Guardian Flight for air ambulance services.

Plaintiff commenced this action on March 27, 2012. Plaintiff alleges that defendant is not paying it in accordance with Section 206 of the Indian Health Care Improvement Act,

---

[4]Docket No. 117.
[5]Docket No. 121.
[6]Docket No. 127.
[7]Docket No. 128.

25 U.S.C. § 1621e. The only remaining claim in this action[8] is Count 3 of plaintiff's first amended complaint, which deals with defendant's post-contract payments to plaintiff. In Count 3, plaintiff seeks to

> recover from [defendant] the difference between the actual amounts it paid to [plaintiff] and [plaintiff's] reasonable charges billed for health care and services provided to [defendant's] insureds or, if [defendant] paid any other nongovernmental provider or reimbursed any individual at a higher rate for similar health care and services, the difference between that amount and the actual amounts [defendant] actually paid [plaintiff], including all charges that [defendant] refused or failed to pay entirely....[9]

In denying defendant's earlier motion for summary judgment as to Count 3, the court held that:

> Section 206(a) provides that a tribal organization is entitled to be paid either <u>the higher</u> of its reasonable billed charges or the rate that <u>any</u> other nongovernmental provider <u>would be eligible</u> to receive for providing the same service to the same patient. In this case, the only rate that any other nongovernmental provider would be eligible to receive is the Alaska UCR rate. In the absence of a contract with defendant, plaintiff is entitled to be paid either its reasonable billed charges or the Alaska UCR rate.[10]

Plaintiff contends that since its contract with defendant terminated, defendant has not been paying plaintiff either its reasonable billed charges or the Alaska UCR rate. Plaintiff contends that defendant takes the amount that plaintiff bills and first reduces it to an "allowed amount,"[11] which is anywhere from 14% to 60% less than the amount billed. Plaintiff contends that defendant then further reduces the "allowed amount" by subtracting co-pays, deductibles, and coinsurance, collectively referred to here as "cost sharing." For

---

[8]Defendant's motion for summary judgment as to Counts 1, 2, and 4 of plaintiff's complaint was granted by order of January 24, 2013. Docket No. 52.

[9]First Amended Complaint at 7, ¶ 19, Docket No. 10.

[10]Order re Cross-Motions for Summary Judgment at 15, Docket No. 52.

[11]Plaintiff contends that defendant unilaterally determines what the "allowed amount" is.

example, in one instance, plaintiff billed $8,157.90; defendant reduced this to an allowed amount of $6,999.48; and then deducted a 60% "out of network" coinsurance amount; ultimately paying plaintiff only 34% of its billed charges, or $2,799.79.[12] In another example, plaintiff billed $4,705.01; defendant reduced the amount billed to an allowed amount of $2,352.48 and then deducted a 50% out-of-network coinsurance amount, ultimately paying 51% of plaintiff's billed charges, or $2,352.48.[13]

Defendant contends that it is paying plaintiff based on the contracts that it has with its members, which, according to defendant, is consistent with Section 206(a). Defendant "incentivizes its members to use in-network providers. ...[M]embers who choose 'out-of-network' providers may be responsible for higher coinsurance, deductible and other copayments than if they use in-network providers."[14] Defendant contends that this distinction between "in-network" and "out-of-network" is common in the healthcare industry" and that other insurers such as Aetna and CIGNA also reduce what they pay plaintiff by the patient's deductible or co-pay amount.[15]

---

[12] Declaration of Paul Adams at 5-6, ¶ 15, and Exhibit B thereto, Exhibit D, Plaintiffs' Memorandum in Support of Second Motion for Summary Judgment, Docket No. 79.

[13] Id. at 6, ¶ 15, and Exhibit C thereto.

[14] Declaration of Rich Maturi at 2, ¶ 3, Docket No. 99.

[15] See Deposition of Michael A. Banks at 142, lns. 2-13, Exhibit 4, Declaration of John R. Neeleman, Docket No. 101. Defendant also moves for leave to submit the declaration of Todd Menenberg, who evaluated EOBs from other insurance companies to see if other insurers reduce their payments to plaintiff to account for co-insurance and deductibles. Plaintiff opposes this motion because it argues that Menenberg's evaluation is irrelevant because he analyzed EOBs from insurance companies with which plaintiff has contracts and the court has concluded that the right to recovery under Section 206(a) does not apply to contracted rates. In support of its opposition, plaintiff offers a declaration from Paul Adams, one of plaintiff's expert, who summarizes 12 EOBs from other insurance companies where plaintiff was paid 100% of its charges. We do not need the supplemental factual information in Menenberg's declaration. Plaintiff has made a statutory interpretation argument here; so, the "facts" at this point are not very relevant. Defendant's motion for leave to submit supplemental factual material is denied. Plaintiff's motion to strike defendant's Rule 7.1(i)(2) pleadings is denied as moot.

Plaintiff now moves for partial summary judgment on Count 3, arguing that Section 206(a) does not allow defendant to deduct cost sharing from the amount plaintiff bills.[16] Defendant cross moves for summary judgment, arguing that plaintiff is not entitled to recover from defendant the cost sharing required by defendant's contracts with its members.

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The instant cross motions for partial summary judgment "turn on legal issues, making them proper for resolution pursuant to" Rule 56. We Are Amer. v. Maricopa County Bd. of Sup'rs, 297 F.R.D. 378, 381 (D. Ariz. 2013).

Defendant argues that plaintiff is barred from any recovery based upon Count 3 of plaintiff's complaint because plaintiff has "unclean hands" due to the way in which the contract between plaintiff and defendant was terminated. "'The doctrine [of unclean hands] bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted.'" Seller Agency Council, Inc. v. Kennedy Center for Real Estate Educ., Inc., 621 F.3d 981, 986 (9th Cir. 2010) (quoting Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 173 (9th Cir. 1989)). "'It is fundamental to [the] operation of the doctrine that the alleged misconduct by the [party] relate directly to the transaction concerning which the complaint is made.'" Id. (quoting Dollar Sys., 890 F.2d at 173).

Plaintiff argues that defendant's reliance on the unclean hands doctrine is misplaced because the doctrine bars claims in equity but is not a defense against a claim for legal

---

[16]Defendant suggests that the "cost sharing" claim is a new claim. Plaintiff is not making a new claim here. Rather, plaintiff is arguing that defendant is not paying it according to Section 206(a) because defendant is deducting cost sharing amounts from plaintiff's billed charges.

relief. Brooks v. Hollaar, 297 P.3d 125, 131 (Alaska 2013). Plaintiff's Count 3 is a contact claim by which plaintiff seeks declaratory and monetary relief, neither of which is equitable relief. See FMC Medical Plan v. Owens, 122 F.3d 1258, 1261 (9th Cir. 1997) ("traditional forms of equitable relief" include "injunction, mandamus, and restitution"). Defendant's unclean hands argument is not a defense to plaintiff's contract action.

The current version of Section 206(a) provides:

> Except as provided in subsection (f), the United States, an Indian tribe, or tribal organization shall have the right to recover from an insurance company, health maintenance organization, employee benefit plan, third-party tortfeasor, or any other responsible or liable third party (including a political subdivision or local governmental entity of a State) the reasonable charges billed by the Secretary, an Indian tribe, or tribal organization in providing health services through the Service, an Indian tribe, or tribal organization, or, if higher, the highest amount the third party would pay for care and services furnished by providers other than governmental entities, to any individual to the same extent that such individual, or any nongovernmental provider of such services, would be eligible to receive damages, reimbursement, or indemnification for such charges or expenses if –
>
>   (1) such services had been provided by a nongovernmental provider; and
>
>   (2) such individual had been required to pay such charges or expenses and did pay such charges or expenses.

25 U.S.C. § 1621e(a).

The court's "starting point" when resolving a question of statutory interpretation "is the plain language of the statute." Wash. v. Chimei Innolux Corp., 659 F.3d 842, 847 (9th Cir. 2011). The court "'examine[s] not only the specific provision at issue, but also the structure of the statute as a whole, including its object and policy.'" Id. at 847-48 (quoting Children's Hosp. & Health Ctr. v. Belshe, 188 F.3d 1090, 1096 (9th Cir. 1999)). "If the plain meaning of the statute is unambiguous, that meaning is controlling and [the court] need not examine legislative history as an aid to interpretation unless 'the legislative history clearly indicates that Congress meant something other than what it said.'" Id. at 848

(quoting Carson Harbor Village, Ltd. v. Unocal Corp., 270 F.3d 863, 877 (9th Cir. 2001)). "If the statutory language is ambiguous, then [the court] consult[s] legislative history." Id.

Plaintiff and defendant continue to disagree about the meaning of Section 206(a), even though they both contend, and the court has agreed,[17] that Section 206(a) is unambiguous. The court has held that Section 206(a) unambiguously gives a tribal organization the right to recover the higher of its "reasonable charges billed" or the Alaska UCR rate. Plaintiff aptly contends that the term "reasonable charges billed" is not ambiguous, and that it means the amount on the bill plaintiff sends to the defendant subject to a reasonableness upper limit. However, plaintiff sometimes appears to argue, as it has before, that Section 206(a) entitles it to recover either its billed charges or, if higher, the Alaska UCR rate. Not so. It is reasonable charges billed or, if higher, the Alaska UCR rate which plaintiff is entitled to recover.

Defendant contends that Section 206(a) unambiguously allows it to deduct from all reimbursements due plaintiff any amount it would deduct if the member had received health care services from a nongovernmental provider. Defendant points out that the Ninth Circuit has explained that "subsection (a)," of Section 206, "which defines the scope of the right of recovery, allows the provider to recover 'to the same extent that [the Native American] individual ... would be eligible to receive reimbursement or indemnification for such expenses.' That wording presupposes that the provider stands in the shoes of the individual...." Blatchford v. Alaska Native Tribal Health Consortium, 645 F.3d 1089, 1092 (9th Cir. 2011) (quoting 25 U.S.C. § 1621e(a) (emphasis added)). Defendant argues that because plaintiff "stands in the shoes" of individual plan members, plaintiff's right to recovery is subject to the same deductible, coinsurance and other co-payment requirements such as out-of-network differentials (cost sharing) as defendant's members. Defendant insists that Section 206(a) provides that whether reimbursement is made based on the

---

[17]Order re Cross-Motions for Summary Judgment at 11, Docket No. 52.

"reasonable billed charges" or on "the highest amount the third party would pay for care and services furnished by providers other than governmental entities", reimbursement is required only "to the same extent that ... any nongovernmental provider of such services, would be eligible to receive ... reimbursement ... for such charges or expenses...." 25 U.S.C. § 1621e(a). Defendant argues that because it reduces payments to "providers other than governmental entities" by cost-sharing amounts, it is entitled to deduct cost-sharing amounts from what it pays plaintiff. Defendant argues that there is no rational reason why the "reasonable billed charges" clause would prohibit cost sharing deductions while the "highest amount the third party would pay for care and services" clause would allow such deductions.

Defendant is half right. As already held, there are two avenues of reimbursement under Section 206(a): "reasonable charges billed" or, if higher, the UCR rate. Section 206(a) contains no language permitting defendant to reduce plaintiff's reasonably billed charges by any form of cost sharing. However, Section 206(a) unambiguously qualifies the amount which plaintiff may recover if it is higher than plaintiff's reasonably billed rates by the "to the same extent" language. The "to the same extent" language does not modify the "reasonable billed charges" language, but rather only modifies the alternative "highest amount the third party would pay" measure of recovery. The "if higher" clause is separated from the "reasonable billed charges" clause with a comma and an "or." "[T]erms connected by a disjunctive [are to] be given separate meanings, unless the context dictates otherwise." See Simpson v. Hegstrom, 873 F.2d 1294, 1298 (9th Cir. 1989) (citation omitted). Here, the context does not require an unusual construction of the alternative payment clauses.

Thus, if defendant is reimbursing plaintiff pursuant to the "reasonable billed charges" payment clause, defendant is not permitted to deduct cost sharing amounts from what it pays plaintiff. If plaintiff's billed charges are determined to be reasonable, a

determination that has not yet been made, then Section 206(a) does not contemplate that the amount that plaintiff is entitled to be reimbursed will be reduced by the cost-sharing amounts. Rather, the focus under the first payment clause in Section 206(a) is on whether the amount billed is <u>reasonable</u>.

But if defendant is reimbursing plaintiff pursuant to the "if higher" payment clause, defendant may be permitted to deduct cost sharing amounts if it is established that (apart from any contracts that defendant may have with health care providers) a non-governmental provider of health services would be eligible to receive reimbursement only after cost-sharing adjustments. Section 206(a) expressly provides that when the "if higher" clause applies, the insurance company's obligation is to reimburse a health care provider "to the same extent [an] individual or any non-government provider of services would be eligible to receive ... reimbursement." Because the insurance company's reimbursement obligation is based upon what a nongovernmental health care provider would be eligible to receive, defendant's reimbursement obligation under the "if higher" payment clause must necessarily take into account cost-sharing items such as co-pays and deductibles.

Defendant argues that the court cannot adopt plaintiff's interpretation of Section 206(a) because Congress did not evince an intent to abrogate defendant's preexisting contract rights in clear and unmistakable language. Defendant also argues that plaintiff's interpretation of Section 206(a) would constitute a violation of defendant's substantive due process rights based upon contract. There is no abrogation or due process problem if reimbursement is made under the "if higher" clause of Section 206(a) because plaintiff's reimbursement may be reduced by applicable cost sharing to the same extent such cost sharing would be deducted from the amount that defendant reimburses any nongovernmental health care provider. But if reimbursement is made based on plaintiff's reasonable billed charges, then defendant may have to reimburse plaintiff more than it would pay a nongovernmental health care provider. In such event, defendant's filings

with the Alaska Department of Insurance come into play. Defendant's "member agreement" forms on file with the State of Alaska contain a savings clause stating that the contracts will be construed in accordance with the law and will be amended by any changes in applicable law.[18] There is no abrogation or due process issue when a contract specifically provides that it will be changed to comply with applicable law.

The foregoing brings the court to a final question: when applicable, does the Alaska UCR rate permit cost sharing? The court concludes that 3 AAC 26.110 does permit cost sharing.

The Alaska UCR rate is established by regulation. 3 AAC 26.110 provides:

> A person that provides coverage in this state for health care services or supplies on an expense incurred basis for which benefits are based on an amount that is less than the actual amount billed for the health care services or supplies shall
>
> (1) maintain or use a statistically credible profile of covered health care services and supplies on which to base payment; the profile must
>
> (A) be updated at least every six months;
>
> (B) contain billed charges for services performed not more than one year before the date of the most recent profile; and
>
> (C) contain billed charges for each geographical area in which a claimant might receive treatment or, if statistically credible data for a particular service or supply item in a certain geographical area is unavailable, contain a sufficient number of billed charges for that service or supply item from another geographical area so that a reliable basis is established;
>
> (2) determine the final payment for a covered service or supply based on an amount that
>
> (A) reflects the general cost differences between the geographical area where the service was performed and the other geographical areas used in establishing the statistically credible profile under (1) of this subsection; the adjustment may be based on the Consumer Price Index, the medical care compon-

---

[18]Exhibit B, Reply in Support of Second Motion for Summary Judgment, Docket No. 114.

   ent of the Consumer Price Index, or another reasonable basis stated in writing; and

   (B) is equal to or greater than the 80th percentile of charges under (1) of this subsection for the health care services or supplies;

   (3) provide with any claim payment an explanation of the basis of payments in clear and simple terms, including explanation of any adjustments made under (2)(A) of this subsection, and document the explanation provided in the claim file; and

   (4) provide an explanation in the health insurance policy of the basis of payments, including any payments for which a covered individual may be responsible and include on any schedule or summary of benefits page accompanying the policy

   (A) the percentile used to determine final payment under (2)(B) of this subsection; and

   (B) a statement regarding whether the covered individual is responsible for any amount billed for a health care service or supply item that exceeds the amount of final payment.

  When the "if higher" clause of Section 206(a) is applicable, the reimbursement to which plaintiff is entitled is determined by the Alaska UCR rate. In making that determination, Section 26.110 requires that defendant provide "an explanation of the basis for payments" ... and "(4) provide an explanation in the health insurance policy of the basis of payments, including any payments for which a covered individual may be responsible...." Subsection 26.110(2)(B)(4)(B) continues to require, among other things, "a statement regarding whether the covered individual is responsible for any amount billed for a health care service or supply item that exceeds the amount of final payment."

  Section 26.110 sets the minimum rate that an insurer such as defendant can pay a service provider such as plaintiff; and if that minimum UCR rate is higher than plaintiff's reasonably billed charges, then plaintiff is entitled to that UCR payment. Section 26.110 does not require that final payment must be <u>equal</u> to the 80th percentile. Rather, final payment must be <u>based</u> upon an amount that is equal to or greater than the 80th percentile

of charges. Section 26.110 unambiguously contemplates that the final payment amount to which a provider is entitled may be reduced by "payments for which a covered individual may be responsible." It is the insurance policy issued by defendant in favor of an individual to which reference must be made to determine what, if any, cost sharing may be deducted in the determination of the final payment to a health care provider. Depending on the actual terms of insurance policies held by defendant's members, it is possible that defendant may take into account co-payments, deductibles, co-insurance, and out-of-network differentials when computing Alaska UCR rates, as long as none of these cost-sharing amounts are derived from defendant's health care services contracts with other health care providers or employers. The court's construction of Section 206(a) does not permit an insurance company such as defendant to qualify or reduce reimbursement otherwise due a health care provider or individual member/beneficiary based upon contracts with employers or other health care providers. But, exactly what types of cost sharing will apply under Section 206(a) and 3 AAC 26.110 when UCR rates are the basis for reimbursement to plaintiff has yet to be determined by the parties or the court.

## Conclusion

The cross-motions for summary judgment are granted in part and denied in part as set out above.

DATED at Anchorage, Alaska, this 15th day of October, 2014.

s/ H. Russel Holland
United States District Judge