Gwendolyn C. Payton, ABA No. 9712101
John R. Neeleman, ABA No. 8611127
LANE POWELL PC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone: 907.264.3309
Facsimile: 907.276.2631
Email:       paytong@lanepowell.com
Email:       neelemanj@lanepowell.com
Attorneys for Defendant Premera Blue Cross

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA NATIVE TRIBAL HEALTH CONSORTIUM,<br><br>                             Plaintiff,<br><br>v.<br><br>PREMERA BLUE CROSS,<br><br>                            Defendant. | Case No. 3:12-cv-00065-HRH<br><br>**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF EXPERT WITNESSES GAMBRELL AND ADAMS** |

Defendant Premera Blue Cross ("Premera") hereby moves to exclude the testimony of Plaintiff Alaska Native Trial Health Consortium's ("ANTHC") expert witnesses, Lori Gambrell and Paul Adams.

### I.    INTRODUCTION

The remaining issue in this case is whether Premera has properly paid ANTHC following the termination of the parties' contract in 2011. This Court has held that ANTHC is entitled to be paid the higher of (1) the rate determined pursuant to the Alaska UCR regulation or (2) its reasonable billed charges. Dkt. 73 at 15. It is undisputed that Premera has paid ANTHC in

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
**CASE NO. 3:12-CV-00065-HRH**

PAGE 1 OF 18

accordance with the Alaska UCR rate. Therefore, the factual issue that must be determined is whether ANTHC's billed charges are "reasonable," and thus whether ANTHC is entitled to damages in the amount of the difference between its billed charges and the amount Premera actually paid.

To support its assertion that its billed charges were "reasonable," ANTHC has disclosed the opinions of two witnesses whom ANTHC intends to call as experts—Lori Gambrell and Paul Adams. For the reasons discussed below, both Gambrell's and Adams's opinions are irrelevant to the issue at hand, are based on flawed and unreliable methodologies and data, and as such will be unhelpful to the jury and serve only to confuse and obscure. Therefore, Premera respectfully requests that the Court exclude the testimony of Gambrell and Adams.

Indeed, ANTHC itself now recognizes that the opinions that these witnesses have developed are untenable, because ANTHC has—in violation of this Court's scheduling order and the discovery rules—completely revamped the expert witness opinions that it offers in support of its allegations that its billed charges are reasonable. ANTHC submits, in support of its Third Motion for Summary Judgment, a declaration from Peter Ripper, whom ANTHC has never disclosed as an expert, which offers an expert opinion that also was never before disclosed to Premera, and would supplant Gambrell's opinions. ANTHC also submits in support of its pending summary judgment motion a new declaration from Paul Adams based upon EOBs that the Court on March 3, 2014 ordered ANTHC to produce to Premera and ANTHC finally produced on May 7, 2014.[1]

---

[1] Premera has requested relief from the Court for ANTHC's untimely disclosures of these opinions and this motion addresses only the opinions of Lori Gambrell and Paul Adams that

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
**CASE NO. 3:12-CV-00065-HRH**

PAGE 2 OF 18

## II. OVERVIEW OF EXPERTS' OPINIONS

### A. Lori Gambrell

ANTHC has identified Lori Gambrell as its expert who will testify that ANTHC's billed charges are reasonable. *See* Ex.[2] A (Gambrell report) at 1. Gambrell is the Director of Reimbursement for PARA Healthcare Financial Services, a private firm. *Id.* Her expert report states as follows:

> It is my opinion, based on publically available data, that the charges billed by the Alaska Native Tribal Health Consortium from 2010 to the present are reasonable when compared either to the Alaska Native Medical Center's peer group of four Alaska hospitals or to a hypothetical rate calculated according to the Alaska Division of Insurance regulation, 3 AAC 26.110 (the "80th percentile" rate). My analysis shows that ANTHC's charges during this period were lower than the 80th percentile of charges by those hospitals for in-patient services and roughly at the 80th percentile for out-patient services.

*Id.* Gambrell does not explain in her report at all how the "publically [sic] available data" to which she refers supports her conclusion that ANTHC's billed charges are "reasonable." However, it is clear that her opinion is based exclusively on a comparison of ANTHC's *billed charges* to the *billed charges* of its supposed "peer" hospitals.

As explained below, Gambrell admits that she made no effort to determine whether ANTHC's billed charges are above the 80th percentile of relevant hospitals based upon 3 AAC 26.110. Therefore, Gambrell's exclusive reliance on billed charges makes her opinion irrelevant

---

were timely disclosed. *See* Premera's Combined (1) Motion To Exclude Previously Undisclosed Expert Opinions of Peter Ripper and Paul Adams, (2) Motion to Strike ANTHC's Third Motion for Summary Judgment, (3) Motion for Continuance Pursuant to FFRCP 56(d) To Obtain Discovery, (4) Opposition to ANTHC's Third Motion For Summary Judgment and (5) Cross-Motion for Summary Judgment, concurrently filed with this motion.

[2] "Ex. ___" refers to an exhibit to the Declaration of Gwendolyn C. Payton filed herewith.

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
CASE NO. 3:12-CV-00065-HRH

PAGE 3 OF 18

as a matter of law, as it fails to account for any of the other reasonableness factors this Court has identified. Further, as explained below, Gambrell's deposition testimony and Premera's expert's examination of the data she relied on reveal that her conclusions are not even supported by her data. Her opinions should therefore be excluded as both irrelevant and unreliable.

**B.    Paul Adams.**

Paul Adams's expert report merely accepts Gambrell's conclusion that ANTHC's charges are "reasonable," and calculates ANTHC's claimed damages based on a purported comparison of ANTHC's billed charges to the amounts Premera actually paid to ANTHC. Ex. E (Adams report). Thus, Adams's testimony must be excluded as irrelevant because it is based entirely on Gambrell's own irrelevant and unreliable opinions.

Further, Adams's report is unreliable because, as discussed in detail below, it is rife with obvious double-counting errors and arbitrary and baseless determinations of which charges Premera was permitted to exclude entirely. Adams's errors result in a demonstrable over-estimation of ANTHC's claimed damages by over $12 million—resulting simply from Adams's arithmetic errors and unexplained internal inconsistencies in his analysis. As such, Adams's opinion is wholly unreliable and must be excluded.

### III.    ARGUMENT

**A.    Standard for Admissibility of Expert Opinions.**

Federal Rule of Evidence 702 provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
**(b)** the testimony is based on sufficient facts or data;

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
CASE NO. 3:12-CV-00065-HRH

PAGE 4 OF 18

  **(c)** the testimony is the product of reliable principles and methods; and
  **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. At the heart of this rule are *Daubert*'s twin requirements of reliability and relevance. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589-92 (1993). "First, Rule 702 requires that the evidence 'assist the trier of fact,' or in other words, that it be relevant." *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). "What is relevant depends on what must be proved … ." *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010).

  "Second, the rule demands that the evidence be reliable." *Guidroz-Brault*, 254 F.3d at 829. The *Daubert* Court identified four factors that may be relevant to the reliability inquiry: (1) whether the expert's technique or theory can be or has been tested, (2) whether the technique or theory has been subject to peer review and publication, (3) the known or potential rate of error of the technique or theory when applied, and (4) whether the technique or theory has been generally accepted in the scientific community. *See Daubert*, 509 U.S. at 592-94. Not all of these factors are necessarily relevant to every case, nor are they exhaustive. *See id.*

  Another factor that may be considered is "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion … ." Fed. R. Evid. 702 advisory committee's note. Further, not only must the expert's methodology be reliable, but the expert's application of that methodology to the facts of the case must be reliable as well. *See id.* ("If the expert purports to apply principles and methods to the facts of the case, it is important that this application be conducted reliably.").

  Rule 702 "imposes a special obligation upon a trial judge" to police these policies and to serve as a "gatekeeper" against expert testimony that does not meet the admissibility standards.

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
**CASE NO. 3:12-CV-00065-HRH**

**PAGE 5 OF 18**

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). *Daubert*'s purpose is to place the court in a gatekeeping role to determine whether the jury should be allowed to hear an expert's testimony; thus, "the district court cannot abdicate its role as gatekeeper," nor can it "delegat[e] that role to the jury." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464 (9th Cir. 2014).

**B.     Gambrell's Expert Opinion Is Neither Reliable Nor Relevant and Must Be Excluded.**

Gambrell opines that ANTHC's billed charges are "reasonable when compared either to [its] peer group of four Alaska hospitals or to a hypothetical rate calculated according to the Alaska Division of Insurance regulation, 3 AAC 26.110" (*i.e.*, the Alaska UCR rate). Ex. A (Gambrell report) at 1. However, it should be noted initially that that this statement is misleading because, by Gambrell's own admission, she did not follow the methodology prescribed by 3 AAC 26.110. Ex. B (Gambrell dep.) at 40:17-41:8. She has not determined whether Premera's payments comply with that regulation, or otherwise whether the regulation would entitle ANTHC to higher compensation than Premera has paid. *See id.*

Further, as explained below, Gambrell's methodology is neither reliable nor would it be helpful to the jury—in fact, it would only serve to obscure the real issues and confuse the jury—and as such, it must be excluded.

**1.     Gambrell did not follow the prescribed methodology for determining what the 80th percentile is, nor did she even attempt to do so.**

Although Gambrell opines that ANTHC's charges are "reasonable when compared … to a hypothetical rate calculated according to … 3 AAC 26.110," by her own admission she did not follow the methodology prescribed by the regulation to determine what that rate is. Menenberg Decl. ¶ 18; Ex. B (Gambrell dep.) at 40:17-41:8. In fact, her testimony is based entirely on work

PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
CASE NO. 3:12-CV-00065-HRH

PAGE 6 OF 18

she did for ANTHC as part of a separate project, the purpose of which was to compare ANTHC's charges to the charges of its own perceived hospital peers in Anchorage in order to determine whether its charges could be increased and remain comparable to those of its "peers." *See* Menenberg Decl. ¶ 18; Ex. B (Gambrell dep.) at 6:20-7:4, 8:5-14, 38:3-39:24, 40:17-41:8, 49:11-50:17.

ANTHC interprets Gambrell's results from this project as meaning that ANTHC's billed charges are below the 80th percentile compared to peer group hospitals and therefore reasonable. *See* Ex. B (Gambrell dep.) at 56:8-57:13; Dkt. 134 at 3. However, this is not an accurate interpretation of Ms. Gambrell's conclusions, because her conclusions were not derived using the methodology prescribed by 3 AAC 26.110. Menenberg Decl. ¶ 18; Ex. B (Gambrell dep.) at 40:17-41:8. Moreover, as discussed below, the "peers" to which Gambrell compared ANTHC included only four hospitals, which were self-selected by ANTHC.

> **2. Gambrell's opinion is fundamentally unreliable because it rests on a comparison of *charges*, which have no bearing on the amounts hospitals actually accept and are actually paid.**

Because Gambrell does not even claim to apply 3 AAC 26.110, her analysis of ANTHC's billed charges in comparison to alleged "peer hospitals" is meaningless. Moreover, Gambrell's opinion that ANTHC's charges are reasonable is based exclusively on a comparison of its *charges* with other hospitals' *charges*. Ex. B (Gambrell dep.) at 42:8-44:7. This is an improper means of determining reasonableness, as a matter of law, because this Court has already held that other factors must be considered, and billed charges usually bear little resemblance to the amounts that hospitals actually accept as payment for individual services.

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
CASE NO. 3:12-CV-00065-HRH

PAGE 7 OF 18

This Court has held that ANTHC may attempt to prove that it is entitled to its billed charges because they are "reasonable." However, their reasonableness—in terms of whether providers can be required to pay them, and whether they can serve as a basis for awarding damages—cannot be determined exclusively by reference to other hospitals' charges, which are usually not grounded in reality and not paid as billed. In its Order on Premera's Motion for Judgment on the Pleadings, this Court held:

> "[N]o single factor can be used to determine the reasonableness of [a] hospital['s] charges. Rather, several non-exclusive factors are relevant to the inquiry." *Colomar v. Mercy Hosp., Inc.*, 461 F. Supp. 2d 1265, 1269 (S.D. Fla. 2006). … These factors include 1) "an analysis of the relevant market for hospital services", 2) the usual and customary rate the hospital charges, 3) the hospital's internal cost structure, 4) the nature of the services provided, 5) the average payment the provider would have accepted as full payment from third-parties, and 6) the price an average patient would agree to pay for the service at issue.

Dkt. 73 (Order) at 14; *see also, e.g.*, *Temple University Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501, 510 (Pa. Super., 2003) (rejecting the hospital's claim for fully billed charges and holding that the hospital could not "unilaterally set a price for its services that bears no relationship to the amount typically paid for those services").

Gambrell's opinion that ANTHC's charges are "reasonable" based on their similarity to other charges completely ignores the multiple factors the Court has identified. Because "no single factor can be used" to determine reasonableness, Gambrell's opinion is inherently unreliable and irrelevant because it is indisputably based on the single factor of what ANTHC and its "peer" hospitals' billed charges are.

Indeed, Gambrell's exclusive reliance on aspirational billed charges is not grounded in reality. Gambrell's reliance exclusively on billed charges is akin to a real-estate appraiser

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
CASE NO. 3:12-CV-00065-HRH

PAGE 8 OF 18

opining that a house's listing price is a reasonable basis for awarding damages by comparing it to other listing prices, rather than actual sale prices. *See Leese v. Lockheed Martin Corp.*, --- F. Supp. 2d ----, 2014 WL 1092406 (D.N.J. Mar. 18, 2014) (excluding expert's report based on a survey of realtors because "[t]he entire formulation of the survey seems to invite unreliability, asking the realtors for their *listing* price (rather than at what price, in their experience, a property like this might *sell*)"); *see also Sun Ins. Mktg. Network, Inc. v. AIG Life Ins. Co.*, 254 F. Supp. 2d 1239, 1244 (M.D. Fla. 2003) ("[A]n 'asking price' is not the same as 'fair market value.' A seller may ask any price he or she chooses, but fair market value is '"the price at which the property would change hands between a willing buyer and a willing seller …"'" (quoting *United States v. Cartwright*, 411 U.S. 546, 551 (1973)). The same is true of a hospital's billed charges. Thus, the premise of Gambrell's opinion—that the reasonableness of ANTHC's charges can be determined based on what other hospitals charge—is fundamentally flawed, and her opinion must be excluded for this reason.

> **3. Gambrell's comparison of ANTHC's billed charges to those of other hospitals is based on a useless methodology that obscures the relevant data.**

In addition to the fact that the premise of Gambrell's reasonableness opinion is fundamentally flawed as a matter of law, her methodology in evaluating ANTHC's billed charges is another fatal problem, and her opinion should be excluded for this reason as well. Gambrell's analysis of inpatient charges is mathematically unsound: it is based on averages taken of averages, which are then compared to other averages. This method, at each step, dilutes the relevance and usefulness of the data by smoothing and masking variations in charges for

PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
CASE NO. 3:12-CV-00065-HRH

PAGE 9 OF 18

individual services between the hospitals—even though charges for individual services are exactly what should be analyzed to determine whether those charges are reasonable.

Gambrell compares ANTHC's *average total charge* for a particular type of claim to the *average total charge* for that same type of claim by ANMC's peer hospitals. Each hospital's average total charges represent its *own average* of those inpatient admissions for that service line. Then, Gambrell *averages the peer hospitals' average total charges* to determine a "peer group average," which she then compares to ANTHC's average total charge. *See* Ex. B (Gambrell dep.) at 49:15-50:25; Menenberg Decl. ¶ 24.

Gambrell does not and cannot demonstrate that this method of averaging averages and comparing them to other averages is a reliable, accurate, or accepted method of comparing hospitals' individual billed charges (or indeed, of comparing anything at all). Menenberg Decl. ¶ 24. For the same reason, her analysis would be completely irrelevant and unhelpful to the jury because it obscures the very data that is at issue in this case: billed charges for *individual* services.

Gambrell's methodology is also fatally flawed in that it involves an analysis of statistically insignificant data. For her analysis of the reasonableness of ANTHC's inpatient charges, Gambrell relies on Medicare data, which includes virtually no data on births (which is not surprising, since Medicare is for the elderly and disabled). Ex. B (Gambrell dep.) at 8:15-20, 42:14-22, 57:14-17, 121:5-10; Menenberg Decl. ¶ 21. And yet births are likely among the most common type of inpatient admission at ANMC. *See* Menenberg Decl. ¶ 22.

Moreover, Gambrell's analysis included only five (5) OB cases at ANMC, and only 20 OB claims at "peer" hospitals: 16 at Providence Medical Center, three (3) at Fairbanks

PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
CASE NO. 3:12-CV-00065-HRH

PAGE 10 OF 18

Memorial, one (1) at Alaska Regional, and zero (0) at Central Peninsula General. This is a tiny number of claims that is an insufficient sample from which to draw a statistically valid conclusion, and moreover, the data varies widely. Menenberg Decl., Ex. B ¶ 13. For example, the one OB case from Alaska Regional had total charges of $5,477, while the three OB cases from Fairbanks Memorial had average total charges of $15,777—about three times as much. *Id.*

Gambrell's reliance on such a small dataset is unsupportable because this data is statistically unsound—especially given that births are the most common type of inpatient admission at ANMC. Her opinion is unreliable and must be excluded for this reason as well.

> **4. Gambrell's opinion is based on her comparison of ANMC to hospitals that ANMC identified as its own "peers," which Gambrell accepted absent verification.**

The hospitals to which Gambrell compares ANMC were selected as "peers" by ANMC itself, not by Gambrell. Ex. B (Gambrell dep.) at 8:5-14, 43:9-44:22; *see also* Ex. D (Ripper dep.) at 51:2-15. Gambrell did not conduct any independent analysis of the relevant market area or of which hospitals should be included as "peers" in her own analysis, nor did she do anything to validate ANMC's selection of its peer hospitals; indeed, she did not even know the reasons ANMC selected certain hospitals as "peers." Ex. B (Gambrell dep.) at 43:9-44:22. (Again, this is because Gambrell's work for ANTHC was done in support of an entirely different project which had nothing to do with the reasonableness of ANTHC's charges for purposes of 3 AAC 26.110. Ex. B (Gambrell dep.) at 6:20-7:4, 8:5-14, 38:3-39:24, 49:11-50:17.)

Gambrell's reliance on ANTHC to select its own "peer" hospitals is, on its own, enough to make her opinion unreliable. "Assumptions based on conclusory statements of the expert's client, rather than on the expert's independent evaluation[,] are not reasonable" and must be

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
**CASE NO. 3:12-CV-00065-HRH**

**PAGE 11 OF 18**

excluded. *CIT Grp./Bus. Credit, Inc. v. Graco Fishing & Rental Tools, Inc.*, 815 F. Supp. 2d 673, 677 (S.D.N.Y. 2011) (citations and internal quotation marks omitted). The unreliability of Gambrell's reliance on her client's own selection of its "peer" hospitals is exemplified by the fact that the "peer" group did not include Mat-Su Regional Medical Center, which is only 38 miles away from ANMC, but it did include Fairbanks Memorial Hospital, which is 358 miles away. Ex. B (Gambrell dep.) at 43:14-44:22; Menenberg Decl. ¶ 25.

Moreover, when ANMC selected the "peer" hospitals, its purpose was to determine whether it could *increase* its own charges, not to determine whether its charges were reasonable—thus, its selection was designed in a way that would give ANMC an undue benefit, since for that purpose it would have wanted to select hospitals that charged more than ANMC did. *See* Menenberg Decl. ¶ 18; Ex. B (Gambrell dep.) at 6:20-7:4, 8:5-14, 38:3-39:24, 49:11-50:17.

### 5. The data on which Gambrell relies undermines her own conclusions.

Gambrell opines that ANTHC's charges are reasonable compared to the Alaska UCR Rate. In this regard, her opinion is nothing more than a vague conclusion, in the aggregate: that ANTHC's charges are "**roughly at** the 80th percentile for out-patient services." Ex. A (Gambrell report) at 1 (emphasis added). Again, Gambrell does not even claim to have determined a rate payable to ANTHC pursuant to the Alaska UCR regulation.

Moreover, the very reason Gambrell must give such an imprecise and generalized opinion that ANTHC's charges are "**roughly at** the 80th percentile for out-patient services" is that she cannot—and does not purport to—opine that *each* of ANTHC's outpatient charges is below the 80th percentile and therefore reasonable. And yet, using ANTHC's actual billed

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
**CASE NO. 3:12-CV-00065-HRH**

**PAGE 12 OF 18**

charges as the baseline for computing ANTHC's damages, ANTHC's purported damages are measured by the difference between *each* of its billed charges and what Premera actually paid.

The premise for ANTHC's claim for the difference between its billed charges and what Premera paid is revealed as false by the very data upon which ANTHC relies. An examination of the data Gambrell relies on reveals that ANTHC's charges for many services are *higher* than the 80th percentile, which undermines the basic premise of her testimony (*i.e.*, that ANTHC's charges are reasonable compared to the Alaska UCR rate). Gambrell relies on an analysis of outpatient charges attached to Mr. Ripper's declaration. *See* Ex. A (Gambrell report) at 3. This analysis shows that of the 291 codes analyzed, *only 78* had a price at ANMC that was equal to or lower than the market's 80th percentile. This means that the remaining 213 of the 291 codes analyzed—approximately 73%—were billed by ANTHC at a price *above* the market's 80th percentile. Menenberg Decl. ¶ 21. This analysis, drawn from the very same data Gambrell relied on, actually leads to the *opposite* conclusion as the one she draws: that ANTHC's charges are, in a majority of cases, *unreasonable* as compared to the Alaska UCR rate.

Similarly, Gambrell's analysis of inpatient charges shows that the average total charges for ANTHC services are actually *higher* than the average of the peer averages for the OB treatment category. Ex. C (Gambrell Dep. Ex. 129). This category is likely the most common type of inpatient service provided by ANMC to Premera members, representing roughly 40% of inpatient services. Menenberg Decl. ¶ 22.

Thus, Gambrell's opinion that ANTHC's charges are reasonable compared to those of ANMC's "peer" hospitals is unsupported by the very data she purports to rely on. Her opinion therefore fails to satisfy the *Daubert* and Rule 702 standards for admissibility, which provide for

PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
CASE NO. 3:12-CV-00065-HRH

PAGE 13 OF 18

the exclusion of an expert opinion "that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Here, "there is simply too great an analytical gap between the data and the opinion proffered" (*id.*); indeed, much of the data flatly contradicts Gambrell's opinion. Therefore, Gambrell's opinion is completely unreliable and should be excluded.

      **6.    Gambrell's opinion is based on irrelevant, nonexistent, unverifiable, and widely variant data.**

Even if Gambrell's opinion were supported by the data she relies on, her opinion still must be excluded because that data is irrelevant to the sole issue in this case, which makes her opinion irrelevant as well. To analyze inpatient charges, Gambrell uses Medicare data that is simply a total charge for the entire inpatient stay at ANMC, and does not include a breakdown of the individual services provided during the inpatient stay. Ex. B (Gambrell dep.) at 8:15-20, 42:14-22, 57:14-17, 121:5-10; Menenberg Decl. ¶ 23. Using this data, it is not even possible to compare the charges for particular services at ANMC with the charges for the same services at other hospitals; it is only possible to compare the total charge for a stay at ANMC with the total charge for a stay at another hospital. Menenberg Decl. ¶ 23. This data gives Gambrell no basis for an opinion about the reasonableness of individual charges.[3] For that additional reason, her opinion is neither reliable nor relevant.

---

[3] Although Gambrell stated in her deposition that she obtained detailed service-by-service data from ANMC for 2013, Ex. B (Gambrell dep.) 122:25-126:10, there is no such data in the materials produced in response to Premera's request for production of information Gambrell relied on in forming her opinion. Nor did Gambrell state that she had service-by-service data for 2012 or 2011. *Id.*

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
**CASE NO. 3:12-CV-00065-HRH**

**PAGE 14 OF 18**

In analyzing outpatient charges, Gambrell relies on a spreadsheet in which charges for various codes are grouped together by "service lines" (*e.g.*, "Clinical Lab – Drug Testing," "Medical Supplies," and "Surgical – Cardiovascular"). However, there is no information provided to indicate which individual procedure codes are assigned to which "service lines"—thus, again, obscuring the data that is actually relevant here: billed charges for *individual* services. Further, because this information is not provided, Gambrell's analysis cannot be replicated, and may very well have been totally subjective and unscientific.

Finally, Gambrell admits that her opinion regarding the reasonableness of ANTHC's charges relative to the Alaska UCR Rate for 2012 and 2011 is **not based on any data at all**. Gambrell testified in her deposition that it would be "difficult" to give an opinion as to whether ANMC was above or below the 80th percentile for inpatient charges in those years because ANTHC did not keep detailed records of this data. Ex. B (Gambrell dep.) at 122:25-124:19. There are no calculations or other objective evidence at all to support Gambrell's assertion that ANTHC's charges are below the 80th percentile. Absent any data at all, Gambrell's opinion as to these years is completely unfounded.

C. **Adams's Expert Testimony Is Based Entirely on Gambrell's Inadmissible Opinion, and Is Filled with Errors and Unexplained Assumptions and Internal Inconsistencies.**

Paul Adams relied on Gambrell's conclusion that ANTHC's billed charges are "reasonable," and has only purported to calculate ANTHC's alleged damages based upon the difference between ANTHC's billed charges and Premera's payments. *See* Ex. F (Adams dep.) at 111:6-9. For this reason alone, Adams's report should be excluded because it is based exclusively on Gambrell's opinion, which is irrelevant and unreliable and therefore inadmissible.

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
**CASE NO. 3:12-CV-00065-HRH**

**PAGE 15 OF 18**

Further, Adams's damage analysis erroneously included approximately $9.7 million in double-counting addition errors. Menenberg Decl. ¶ 26. Mr. Adams incorrectly added up the figures ANTHC billed to Premera (which he essentially determined to be ANTHC's damages) because his approach simply summed all amounts in the "billed" column of the spreadsheet he received from ANTHC's counsel—**which, in numerous instance, included both the total amount billed for an account as well as the service-by-service billings which made up the total for the same account**. *Id.* Examples are as follows:

- Mr. Adams's analysis included a statement identified as account number 824154904500m which contained 26 bill lines. Line one for the account shows charges of $87,297 and payments of $87,297. The sum of the charges on lines 2 through 26 for the account equals the same $87,297 shown on line 1 of the account, and each of the descriptions for lines 2 through 26 states "CHGS COMBINED W/PRIMRY PROC FOR PRICE." However, Mr. Adams summed the amounts reported in the billed column, thereby double-counting the $87,297 and overstating his "damages" by $87,297 for this single statement. Thus, he totaled $174,594 in charges when there was only $87,297 in actual charges. Premera did pay the full charges on this claim of $87,297, but Mr. Adams's sloppy methodology added $87,297 to his damages calculation. Menenberg Decl. ¶ 27.
- Likewise, the statement numbered 823794217401 contained 18 bill lines, and Mr. Adams double-counted charges of $46,722 (totalling $93,444) because of the same sloppy methodology described above. Again, Premera paid the full billed charges on this claim of $46,722, but Mr. Adams's error still calculates damages of $46,722. Menenberg Decl. ¶ 28.

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
CASE NO. 3:12-CV-00065-HRH

PAGE 16 OF 18

- For statement number 123260062801, which has 48 bill lines, Mr. Adams double-counted charges of $940,758 (totalling $1,881,516) because of the same sloppy methodology described above. Again, this claim was paid $549,045 by Premera, but Mr. Adams's error adds the full $940,758 plus the difference between $940,758 and $549,045. Menenberg Decl. ¶ 29.

There are numerous additional examples of similar mistakes throughout Adams's work, with the result that he double-counts ANTHC's charges by a total of approximately $9.7 million. Menenberg Decl. ¶ 30.

Further, Adams made arbitrary and uninformed decisions about which of ANTHC's billings contained "ineligible charges," and as a result, included in his damages calculation charges for services that were denied by Premera for legitimate contractual reasons, including lack of patient eligibility or coverage, policy terminations, or potential other insurance coverage. Menenberg Decl. ¶ 31. As a basis for his determination of which charges were "ineligible," Adams offers only a two sentence summary in his report which does not allow any independent testing of his work, as he did not provide any of the schedules, workpapers, or calculations showing how he determined which charges were "ineligible." *Id.* Adams's Rebuttal Report states: "Include Disallow Amounts that adjust charges on problematic claims where eligibility, benefits or other billing issues are questioned and charges disallowed by Premera. Examples include denials for Ineligible members, Services Not Covered by Plan, Coordination of Benefits, etc." Ex. E (Adams report) at 4.

Adams excluded approximately $15.5 million of "ineligible charges" (with no evidence or support). However, the database he used for his damage analysis contained over $18 million of charges for claims that had been denied in their entirety. Menenberg Decl. ¶ 32. He has no explanation for this approximately $2.5 million difference. *Id.* Apparently he is claiming that Premera incorrectly adjudicated these claims, which would be well outside the scope of his

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
**CASE NO. 3:12-CV-00065-HRH**

**PAGE 17 OF 18**

testimony and expertise, and is not an issue that ANTHC has raised in this case. *Id.* In any event, Adams did not provide any detail to allow his $15.5 million number to be independently tested. *Id.* Combined with his earlier double-counting error, Adams's damage calculation is seriously flawed, unreliable, and results in misleading conclusions. *Id.*

## IV. CONCLUSION

For the reasons above, the expert testimony of Lori Gambrell and Paul Adams should be excluded.

DATED this 29th day of October, 2014.

LANE POWELL LLC
Attorneys for Defendant

By */s/ Gwendolyn C. Payton*

Gwendolyn C. Payton
Alaska Bar No. 0511094
paytong@lanepowell.com
John R. Neeleman
Alaska Bar No. 107706
neelemanj@lanepowell.com
LANE POWELL PC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Tel: 907-264-3309
Fax: 907-276-2631

I certify that on October 29, 2014, a copy of the foregoing was served by ECF on:

Richard D. Monkman
dick@sonoskyjuneau.com

Michael Madden
mmadden@bbllaw.com

   /s/ Gwendolyn Payton
100407

**PREMERA'S MOTION TO EXCLUDE TESTIMONY OF GAMBRELL AND ADAMS**
*ALASKA NATIVE TRIBAL HEALTH CONSORTIUM V. PREMERA BLUE CROSS*
**CASE NO. 3:12-CV-00065-HRH**

PAGE 18 OF 18