Gwendolyn C. Payton, ABA No. 9712101
John R. Neeleman, ABA No. 8611127
LANE POWELL PC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Telephone: 907.264.3309
Facsimile: 907.276.2631
Email: paytong@lanepowell.com
Email: neelemanj@lanepowell.com
Attorneys for Defendant Premera Blue Cross

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA NATIVE TRIBAL HEALTH CONSORTIUM,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>PREMERA BLUE CROSS,<br><br>　　　　　　　　　　Defendant. | Case No. 3:12-cv-00065-HRH<br><br>**PREMERA'S REPLY IN SUPPORT OF ITS COMBINED (1) MOTION TO EXCLUDE PREVIOUSLY UNDISCLOSED EXPERT OPINIONS OF PETER RIPPER AND PAUL ADAMS, (2) MOTION TO STRIKE ANTHC'S THIRD MOTION FOR SUMMARY JUDGMENT, (3) MOTION FOR CONTINUANCE PURSUANT TO FRCP 56(D) TO OBTAIN DISCOVERY, (4) OPPOSITION TO ANTHC'S THIRD MOTION FOR SUMMARY JUDGMENT AND (5) CROSS-MOTION FOR SUMMARY JUDGMENT** |

Defendant Premera Blue Cross ("Premera") submits this Reply in support of its Combined (1) Motion to Exclude Previously Undisclosed Expert Opinions of Peter Ripper and Paul Adams, (2) Motion to Strike ANTHC's Third Motion for Summary Judgment, (3) Motion for Continuance Pursuant to FRCP 56(d) to Obtain Discovery, (4) Cross-Motion for Summary Judgment, and (5) Opposition to ANTHC's Third Motion for Summary Judgment ("Combined Motion" or "Combined Mot.").

# I. INTRODUCTION

ANTHC's Opposition to Defendant's Motion to Exclude (Dkt. 160) ("Opp.") confirms that ANTHC has submitted two expert witness opinions in support of its Third Motion for Summary Judgment (Dkt. 160) ("Third MSJ"), without having previously disclosed these opinions to Premera. ANTHC makes the following arguments in response to Premera's motion to strike these opinions as untimely: First, ANTHC argues that Peter Ripper's testimony is "lay" testimony offered under Federal Rule of Evidence 701, not expert testimony offered under Rule 702. Second, ANTHC argues that Premera is not prejudiced by its late disclosure of Ripper's opinion because allegedly the data underlying his opinion has been available to Premera. Third, ANTHC argues that the late disclosure of Paul Adams' testimony is excusable because it is rebuttal testimony prompted by Todd Menenberg's testimony regarding the EOBs produced by ANTHC in response to this Court's order compelling discovery (Dkt. 103).

These arguments fail for multiple reasons. First, Rule 701 anticipates that parties will attempt to avoid the disclosure requirements of Federal Rule of Civil Procedure 26, and is designed to prevent exactly what ANTHC is attempting to do here. Where a party defies these rules, Rule 37 and abundant case law provide that the remedy is that the expert's testimony should be stricken. Ripper is an "expert in lay witness clothing" because it is undisputed that his opinion is based on "scientific, technical, or other specialized knowledge within the scope of Rule 702." This automatically excludes him from the definition of a lay witness. Fed. R. Evid. 701. ANTHC itself admits that Mr. Ripper is "offer[ing an] expert opinion" and that he "indisputably qualifies as an expert under Evidence Rule 702".

Moreover, ANTHC does not dispute that Ripper prepared his new testimony, including his bar charts, exclusively for this litigation, indeed specifically for ANTHC's Third MSJ. Mr. Ripper's declaration vaguely states that his firm was "most recently asked" by ANTHC to perform this

analysis—*i.e.*, asked for purposes of this litigation. His analysis is not fact witness testimony. It is expert testimony.

Second, ANTHC's belated disclosure of Ripper's testimony prejudices Premera regardless of Premera's access to the Medicare ("CMS") data upon which Ripper purportedly relies. ANTHC still has not disclosed how Ripper used the data to reach the opinions depicted in the 51 pages of bar charts that ANTHC submitted with its Third MSJ. Even by now, Mr. Ripper has not explained his methodology with sufficient detail to enable Premera or its experts to determine how Ripper used the data.

Third, with respect to Adams's new opinion, Premera was entitled to submit a supplemental report from its expert Todd Menenberg based upon EOBs wrongfully withheld by ANTHC and that this Court compelled ANTHC to produce. If ANTHC was entitled to submit a rebuttal opinion from Adams, it had to do so within the deadline established by Rule 26, but ANTHC served Adams's opinion months after the deadline for rebuttal opinions, and did so in support of its Third MSJ. As such, it is an improper ambush and therefore inadmissible.

ANTHC's extremely belated disclosure of its expert witnesses' opinions is in clear violation of the Federal Rules of Civil Procedure and Evidence. These improper opinions must be excluded, and without them, ANTHC's Third MSJ has nothing to stand on.

Furthermore, even if the opinions were not excluded, ANTHC's concessions in this case establish that Premera is entitled to summary judgment. And ANTHC has failed to establish that it is entitled to summary judgment because (1) it has never shown, or attempted to show, that Premera failed to pay it in accordance with the Alaska UCR rate, and (2) it cannot show that its charges, to the extent they are higher than the UCR rate, are "reasonable" because it has not applied the Court's six-factor test for reasonableness.

Page 3 of 15
ANTHC v. PREMERA BLUE CROSS, Case No. 3:12-cv-00065-HRH

Case 3:12-cv-00065-HRH   Document 169   Filed 03/23/15   Page 3 of 15

## II. ARGUMENT

### A. ANTHC's Previously Undisclosed Expert Testimony Should Be Stricken.

#### 1. Peter Ripper's testimony should be stricken.

##### a. <u>Ripper is an "expert in lay witness clothing</u>."

Mr. Ripper's opinion testimony submitted in support of ANTHC's Third MSJ is expert testimony under Rule 702, not lay witness testimony under Rule 701. Mr. Ripper is not a "fact witness" simply because ANTHC calls him that.

Rather, Mr. Ripper's opinion is *undisputedly* "based on scientific, technical, or other specialized knowledge within the scope of Rule 702"—thus excluding him from the definition of a lay witness. Fed. R. Evid. 701. Indeed, ANTHC itself admits that Mr. Ripper is "offer[ing an] expert opinion" and that he "indisputably qualifies as an expert under Evidence Rule 702" for purposes of the testimony at issue. Opp. at 9.[1] Rule 701's prohibition on "lay" witnesses offering opinions based on "specialized knowledge within the scope of Rule 702" is specifically designed to prevent parties from attempting to do exactly what ANTHC is attempting to do here: "proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee's note; *see also, e.g.*, *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (excluding testimony of purported lay witness who was not disclosed as an expert where the testimony was "precisely the type of 'specialized knowledge' governed by Rule 702").

ANTHC attempts to circumvent Rule 701's prohibition on "lay" witness testimony based on "specialized knowledge" by emphasizing that Mr. Ripper's work for ANTHC in the ordinary course of its business "has involved exactly the same subject matter as his testimony: comparison of

---

[1] In raising this point, ANTHC misstates the law. It represents to the Court that "fact witnesses are permitted to offer expert opinions when . . . the witness would qualify as an expert under Federal Rule of Evidence 702 . . . ." Opp. at 9. The law is exactly the opposite. Rule 701 provides that, for lay witnesses, "testimony in the form of an opinion is limited to one that is . . . ***not*** based on scientific, technical, or other specialized knowledge within the scope of Rule 702." (Emphasis added.)

Page 4 of 15
ANTHC v. PREMERA BLUE CROSS, Case No. 3:12-cv-00065-HRH

Case 3:12-cv-00065-HRH   Document 169   Filed 03/23/15   Page 4 of 15

ANTHC's billed charges to those of peer hospitals[.]" Opp. at 7. This is an apparent invocation of Rule 701, which provides that a lay witness opinion must be "rationally based on the witness's perception." But Mr. Ripper's personal knowledge of relevant facts does not make his opinion a lay opinion; as the Ninth Circuit has held, the "mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702." *Figueroa-Lopez*, 125 F.3d at 1246. Again, Rule 702 establishes that *any* testimony based on specialized knowledge—which Mr. Ripper's admittedly is—is expert testimony, not lay testimony. Fed. R. Evid. 701, 702.

Even if Mr. Ripper's personal knowledge relevant to this case had anything to do with whether his opinion is that of an expert witness, it is worth noting that Mr. Ripper's proffered opinions were *undisputedly* prepared specifically for use in this litigation. *See* Combined Mot. at 17-18; *see generally* Opp. This indicates that Mr. Ripper's opinions were not, in fact, developed in the ordinary course of his work for ANTHC—and thus not, in fact, "rationally based on [his] perception." Fed. R. Evid. 701. As Premera explained in its Combined Motion, it is extremely unlikely that ANTHC asked Mr. Ripper to compare its charges with other hospitals' charges, *and with Premera's payments*, for a purpose other than this litigation. *See* Combined Mot. at 17-18. Mr. Ripper's blatant avoidance of the issue is telling as well: he testifies that his firm was "most recently asked" by ANTHC to perform this analysis; for what purpose, he deliberately does not say. *Id.*

Because Mr. Ripper's opinion testimony submitted in support of ANTHC's Third MSJ is undisputedly based on specialized knowledge under Rule 702, he does not qualify as a lay witness.[2]

---

[2] Whether Mr. Ripper was "designated" as a lay witness for other purposes in this case is irrelevant. *See* ANTHC Opp. at 6-7. The same witness can be an expert as to some opinion testimony, even if he is a lay witness as to other opinion testimony. *See* Wright & Gold, Federal Practice and Procedure: Evidence § 6263, Vol. 29 (1997) at 192 ("Rule 701 regulates the competency of a witness to give opinion testimony when that witness 'is not testifying as an expert.' Rule 702 controls when the witness offers expert opinion.").

> b. **Because Ripper is an expert witness, ANTHC was required to disclose his report under Rule 26(a)(2), but it failed to do so.**

Based on the above, Mr. Ripper's declaration submitted in support of the Third MSJ, including the accompanying 51 pages of bar charts, is an expert opinion under Rule 702. As such, ANTHC was required to disclose his testimony to Premera, including a comprehensive written report. Fed. R. Civ. P. 26(a)(2). ANTHC does not dispute that it failed to provide such a report. *See generally* Opp.

Instead, ANTHC argues that there has been no prejudice to Premera because Premera "has access to" the data on which Mr. Ripper relied to create the bar chart comparisons. Opp. at 11. According to Mr. Ripper's declaration, he prepared the bar charts using CMS data. Specifically, he obtained inpatient data "via an analysis of" the CMS Medicare Provider Analysis and Review (MEDPAR) file, and outpatient data from the CMS Outpatient Standard Analytical file. Dkt. 134-1 at 3; *see also* Opp. at 10. In his deposition in this case, which took place over a year ago, Mr. Ripper explained that the inpatient file includes "20 to 30 million claims . . . every year" and the outpatient file includes 105 million claims. Dkt. 160-3 (Ripper Dep.) at 6-7.

Merely having access to CMS data does not establish a lack of prejudice to Premera—far from it. Given the volume of the CMS data, ANTHC's assertion that Premera is not prejudiced because it has access to the data is akin to asserting that there is no need for ANTHC to serve Premera with its briefing because Premera has access to a dictionary. It is ANTHC's burden, not Premera's, to disclose the basis of Mr. Ripper's opinion in a way that is comprehensible to Premera. *See* Fed. R. Civ. P. 26(a)(2) advisory committee's note (expert disclosure must be "detailed and complete," not "so sketchy and vague" that it is incomprehensible to the opposing party).

Yet, in his declaration, Mr. Ripper does not explain what his "analysis" of the CMS data— which contain multiple millions of claims—entailed. For example, he does not explain whether, or how, he narrowed the files to a smaller set of data. He does not offer any explanation of his

methodology with sufficient detail to enable Premera or its experts to determine exactly what Mr. Ripper did with this data, or to re-create his analysis.

Because the disclosure of Mr. Ripper's opinion was substantively deficient, in addition to being untimely, his testimony should be excluded. *See, e.g.*, *United Nat. Maintenance, Inc. v. San Diego Convention Ctr. Corp.*, No. 07cv2172 AJB, 2011 WL 672799, at *2 (S.D. Cal. Feb. 18, 2011) (excluding expert testimony that did not meet the "bare minimum" requirement of disclosing the expert's methodology, and observing that requiring the defense to draw inferences based on the expert's general statement "would unfairly shift the burden of disclosure").

ANTHC also argues that the basis for Mr. Ripper's current opinion was somehow already disclosed in a declaration and in deposition testimony from over a year ago. Opp. at 10. To suggest that Premera has "long been aware" of Ripper's *new* opinion is absurd. *Id.* at 11. Premera had never seen Mr. Ripper's new opinion until ANTHC filed its Third MSJ. If the new opiniond was no different than Mr. Ripper's previous testimony, then ANTHC could have based its Third MSJ on Mr. Ripper's previous testimony, but it did not do so. Instead, it ambushed Premera with new expert testimony that had never been disclosed before.

        c.    <u>ANTHC's disclosure of Ripper's opinion was inexcusably late and prejudicial to Premera</u>.

Mr. Ripper's new expert testimony was not disclosed to Premera in a remotely timely manner; it was well outside the deadlines established by Rule 26 and the schedule in this case. Combined Mot. at 21. Not only that, but it was disclosed for the first time in conjunction with ANTHC's dispositive motion. Premera would be substantially prejudiced if it had to defend itself against such a motion based on previously undisclosed expert testimony.

Federal Rule of Civil Procedure 26(a)(2)'s expert disclosure requirement is designed to prevent exactly the sort of prejudice Premera faces now. As Premera explained in its Combined Motion, Mr. Ripper's expert opinion was not disclosed in a remotely timely manner, and the remedy

for ANTHC's failure to abide by Rule 26(a)(2) is exclusion of Mr. Ripper's testimony. Combined Mot. at 23-24. Mr. Ripper's never-before-disclosed testimony should be excluded.

> **2. Paul Adams's testimony should be stricken.**
>
>> a. <u>ANTHC's attack on Menenberg's expert report does not justify ANTHC's untimely disclosure of Adams's opinion</u>.
>>
>>> (1) Menenberg's supplemental report was based upon ANTHC's production compelled by this court's order, and it was therefore timely.

ANTHC's first line of defense regarding Mr. Adams's report is not to attempt to justify its late disclosure, but instead to attack the testimony of Premera's expert, Todd Menenberg. Opp. at 12-13. This approach is unavailing.

ANTHC contends that Mr. Menenberg's July 18, 2014 supplemental report was late because it was disclosed after the deadline to disclose expert testimony. But ANTHC does not acknowledge that this is because Mr. Menenberg's report analyzed data that ANTHC initially refused to produce to Premera, and did not produce until May 7, 2014, in response to the Court's order compelling production. Combined Mot. at 4, 6; *see also* Dkt. 103 (Order). Premera is entitled to produce a supplemental expert report addressing this late-produced discovery. *See Parrick v. FedEx Ground Package Sys.*, No. CV 09-95-M-DWM-JCL, 2010 WL 3724825, at *6 (D. Mont. Sept. 17, 2010) (allowing supplemental expert reports to address untimely-produced information). And as discussed in Premera's Combined Motion, while it may have been "fair" for ANTHC to submit a rebuttal opinion in response[3] to Mr. Menenberg's supplemental report (*see* Opp. at 14), ANTHC was required to do so in a timely manner. It is certainly *not* fair for ANTHC to submit a rebuttal report that was not only months late, but was disclosed for the first time as support for a dispositive motion. Combined Mot. at 21-22.

---

[3] ANTHC admits that Mr. Adams's expert testimony is a rebuttal to Mr. Menenberg's; thus, Rule 26(a)(2)(D)(ii) admittedly applies. *See* Opp. at 14 (arguing that ANTHC should "have a chance to respond" to Mr. Menenberg's report); Combined Mot. at 22 (Rule 26(a)(2)(D)(ii) requires that rebuttal reports be disclosed within 30 days).

Notably, Mr. Menenberg's supplemental report was disclosed to ANTHC eight months ago, on July 18, 2014. Combined Mot. at 4, 22. In the intervening months, ANTHC has neither objected to Mr. Menenberg's report, nor moved to exclude it, nor sought additional discovery in light of the report. The fact that ANTHC has never raised any issue with Mr. Menenberg's report until now shows that its current attack on the report is disingenuous, and is merely an attempt to excuse its late disclosure of its own experts' testimony.

> (1) ANTHC, which bears the burden to prove its alleged damages, does not challenge with evidence Menenberg's opinion that Premera has complied with the Alaska UCR.

Furthermore, to the extent ANTHC objects to the subject matter of Mr. Menenberg's report (despite having failed to register any timely objection to the report), *see* Opp. at 13 n.16, the report must be considered in the context of the burden of proof in this case, and what is currently at issue. *Motion Picture Industry Pension & Health Plans v. N.T. Audio Visual Supply, Inc.*, 259 F.3d 1063, 1067 n.3 (9th Cir. 2001) (noting that absent an explicit statutory provision for burden shifting, "the normal procedure" applies—"i.e., that a plaintiff must plead and prove its damages"). Premera has offered Todd Menenberg's expert testimony that Premera has paid the UCR rate, and ANTHC has failed to submit any evidence to contradict his testimony.[4] It is ANTHC's burden in this case to demonstrate either that (1) Premera did not pay it the UCR "80th percentile" rate (which ANTHC has never argued or attempted to show)[5], or (2) ANTHC's charges are both higher than the Alaska UCR rate and "reasonable." As ANTHC's other expert Lori Gambrell has testified in her declaration filed concurrently with ANTHC's most recent filings: "ANTHC never requested that PARA

---

[4] ANTHC notes Menenberg's observation that for a time Premera did not update its database at intervals required by the Alaska UCR regulation. However, there is no evidence that this caused ANTHC any damages.

[5] ANTHC reiterates in its Opposition that it is "seeking to recover its reasonable billed charges and not according to the Alaska UCR rate[.]" Opp. at 19 n.30; *see also id.* at 3 ("the sole remaining question is whether ANTHC's billed charges are reasonable"—not whether Premera paid the UCR rate); *but see* Dkt. 161 (ANTHC Opp. to Cross-MSJ) at 5-6 (arguing that Premera did not comply with the UCR regulation, but asserting that this is irrelevant).

[Gambrell's and Ripper's firm] specifically align ANTHC's billed charges with rates determined by the methodology set forth in the Alaska 'Usual and Customary' regulation, 3 AAC 26.l10." Dkt. 160-4 (Gambrel Dec.) at ¶ 5.

It is not Premera's burden to prove anything with regard to the reasonableness of ANTHC's charges—especially in light of the fact that ANTHC appears to contend that its billed charges are actually *lower* than the UCR rate. *See, e.g.*, Dkt. 134 at 26 (alleging that "ANTHC's billed charges are . . . almost always at or below the Alaska UCR").

        b.        <u>The late disclosure of Adams's new report is highly prejudicial</u>.

ANTHC attempts to excuse its late disclosure of Mr. Adams's report by arguing that his opinion "does not touch on any new subject matter" and involves the same "issues" as his previous opinion. Opp. at 15, 16. This misses the point, which is that Mr. Adams's expert opinion is a *new opinion*. As such, it is required to be disclosed to Premera in accordance with Rule 26(a)(2), whether it is a primary opinion or a rebuttal opinion. Disclosure of the opinion for the first time in conjunction with a dispositive motion is highly prejudicial to Premera.

By the same token, Premera's previous deposition of Mr. Adams occurred well before Mr. Adams issued his new opinion, so that deposition is irrelevant to whether Premera is prejudiced. In light of ANTHC's highly prejudicial untimely disclosure of Mr. Adams's opinion in violation of Rule 26(a)(2), his testimony should be stricken.

**B.    ANTHC's Third Motion for Summary Judgment Based on the Inadmissible Expert Testimony Should Be Stricken.**

The entire evidentiary basis of ANTHC's Third Motion for Summary Judgment is the late-disclosed expert opinions of Mr. Ripper and Mr. Adams submitted in violation of the Federal Rules of Evidence and Civil Procedure. *See, e.g.*, Third MSJ at 3 (explaining that the Third MSJ is based on "the declarations and charts filed with this motion"—*i.e.*, the Ripper and Adams opinions). Therefore, Premera asks that the Court grant its request to strike the Third MSJ. *See* Mot. at 5, 38.

### C. Premera's Requests for Alternative Relief.

If the above-requested relief is not granted, Premera has sought three alternative forms of relief: (1) a Rule 56(d) continuance to allow for additional discovery related to the late-disclosed expert opinions of Mr. Ripper and Mr. Adams; (2) grant of Premera's cross-motion for summary judgment; and (3) denial of ANTHC's Third MSJ.

#### 1. If the Court does not strike the new expert reports, a Rule 56(d) continuance is warranted.

In opposing Premera's request for a Rule 56(d) continuance (*see* Combined Mot. at 24-26), ANTHC argues that, despite its failure to disclose Mr. Ripper's or Mr. Adams's expert opinions until it attempted to use them to support its Third MSJ, Premera has somehow had a "previous opportunity to develop evidence" related to these late-disclosed opinions. Opp. at 24-25. As discussed above, these experts' opinions are *new opinions*, so any previous discovery regarding these experts was conducted without the benefit of knowing what the new opinions are. (And with regard to Mr. Ripper, Premera has had no opportunity to even determine whether he is qualified as an expert, since he has never been disclosed as such, nor has he ever provided a report.) Therefore, Premera is entitled to obtain discovery to allow it to understand the basis for the expert witnesses' opinions, including their methodologies in developing those opinions, before summary judgment can be granted to ANTHC. Fed. R. Civ. P. 26(b)(4)(A) (party is entitled to depose opposing expert witness following disclosure of expert report).

Furthermore, ANTHC's suggestion that there is no material factual dispute as to the reasonableness of its billed charges, Opp. at 26, completely ignores both Premera's discussion of the application of the six-factor reasonableness test established by this Court, and Premera's disclosure of Mr. Menenberg's expert opinion that ANTHC's charges are not reasonable. Combined Mot. at 31-37.

Page 11 of 15
ANTHC v. PREMERA BLUE CROSS, Case No. 3:12-cv-00065-HRH

Case 3:12-cv-00065-HRH   Document 169   Filed 03/23/15   Page 11 of 15

## 2. Premera's cross-motion for summary judgment should be granted based on key concessions by ANTHC.

ANTHC is entitled to be paid the higher of (1) the rate determined in accordance with the Alaska UCR regulation or (2) its reasonable billed charges. Dkt. 73 at 15.

Premera seeks summary judgment because it is established that Premera paid ANTHC in accordance with the Alaska UCR regulation. Combined Mot. at 37. This is uncontested: ANTHC does not dispute that Premera paid it the UCR rate, and concedes that this is not at issue in this case. Opp. at 19 n.30 ("ANTHC is seeking to recover its reasonable billed charges and not according to the Alaska UCR rate"); *id.* at 3 ("the sole remaining question is whether ANTHC's billed charges are reasonable," not whether Premera paid the UCR rate); Dkt. 160-4 (Gambrell Dec.) at ¶ 5 ("ANTHC never requested that PARA [Gambrell's firm] specifically align ANTHC's billed charges with rates determined by the methodology set forth in the Alaska 'Usual and Customary' regulation, 3 AAC 26.110.").[6]

ANTHC also concedes that its billed charges are *lower* than the UCR rate. Dkt. 134 at 26 ("ANTHC's billed charges are . . . almost always at or below the Alaska UCR"); *see also* Third MSJ at 3 ("ANTHC's billed charges to Premera are almost always lower . . . than the . . . 'Alaska UCR' rate . . .").

Because ANTHC concedes that the Alaska UCR rate is higher than its actual billed charges, and does not dispute that Premera paid it in accordance with the Alaska UCR rate, there is no material factual dispute and Premera is entitled to summary judgment.

---

[6] Despite these concessions, in a separate Opposition, ANTHC contends that Premera did not comply with the UCR regulation; however, it asserts that Premera's compliance with the UCR regulation is not "relevant to the issue at bar[.]" Dkt. 161 (ANTHC Opp. to Cross-MSJ) at 5-6. In any event, ANTHC has not submitted evidence that any non-compliance with the Alaska UCR by Premera caused ANTHC damages.

ANTHC v. PREMERA BLUE CROSS, Case No. 3:12-cv-00065-HRH

### 3. ANTHC's Third MSJ should be denied to the extent there is any remaining issue of fact.

If the Court does not strike ANTHC's Third MSJ entirely because it is based on previously undisclosed expert testimony, and regardless of whether the Court grants Premera's cross-motion for summary judgment, the Court should deny ANTHC's Third MSJ. Even if the concessions discussed above are disregarded, at the very least, issues of material fact exist that preclude granting summary judgment for ANTHC.

First, there is at least an issue of fact as to whether Premera paid ANTHC in accordance with the UCR rate—to the extent ANTHC even disputes this. Although ANTHC's expert witness, Lori Gambrell, testified that she compared ANTHC's charges to the 80th percentile of a "peer group" of hospitals (which appears to be a reference to the methodology prescribed by the Alaska UCR regulation), Ms. Gambrell also testified that she had no opinion as to whether Premera's payments to ANTHC complied with the Alaska UCR regulation. *See* Combined Mot. at 29-30; *see also* Opp. at 19 (admitting that the scope of ANTHC's expert work "did not include UCR calculation"). ANTHC has not provided any argument or evidence—in the form of expert opinions or otherwise—regarding Premera's compliance with the Alaska UCR regulation. *See* Combined Mot. at 29.

Second, there is at least an issue of fact as to whether ANTHC's charges—if they are higher than the Alaska UCR rate—are "reasonable." The reasonableness of ANTHC's charges must be analyzed in accordance with the six-factor test identified by the Court. Dkt. 73 at 14. ANTHC does not dispute that Ms. Gambrell's testimony speaks only to one, or possibly two, of those six factors: ANTHC's own charges, and the charges of other hospitals. *See* Opp. at 20. Ms. Gambrell's opinion is that ANTHC's charges are reasonable *only* by comparison to the charges of other hospitals. *See* Combined Mot. at 10, 11. This conclusion ignores all the factors the Court identified that are based on anything other than charges. *See* Dkt. 73 at 14.

Premera, on the other hand, has analyzed the relevant factors, and its expert Todd Menenberg has provided opinions that are relevant to the more important factors that ANTHC has not analyzed,

including "the average payment the provider would have accepted as full payment from third parties" and "an analysis of the relevant market for hospital services." Combined Mot. at 35-37.

In addition, there is at least an issue of fact as to the reasonableness of ANTHC's charges because the parties' experts have conflicting opinions on this question. *See Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979) (it is "not the court's function on summary judgment" to resolve an issue of fact raised by conflicting expert testimony). Mr. Menenberg has opined that Ms. Gambrell's methodology for comparing ANTHC's charges to those of other hospitals is unreliable for a number of reasons, including that her conclusion is not supported by her data[7]; she uses Medicare data rather than ANTHC's own data to analyze ANTHC's inpatient charges[8]; she compares averages to averages[9]; and she did not independently select ANTHC's "peer" hospitals for comparison[10]. Combined Mot. at 11-14. To the extent ANTHC's admissions do not resolve the issue, these disputes between the experts create issues of fact that preclude summary judgment in ANTHC's favor.

### III. CONCLUSION

For the reasons above and in its Combined Motion, Premera requests that the Court strike the untimely disclosed expert opinions of Peter Ripper and Paul Adams, and that the Court strike

---

[7] ANTHC responds that it is true that not "all" of its charges exceed the 80th percentile, Opp. at 21, but does not address Mr. Menenberg's conclusion that ANTHC's charges exceed the 80th percentile for 73% of the codes analyzed. Combined Mot. at 12.

[8] ANTHC argues that Mr. Menenberg used the same data, Opp. at 21-22, but sidesteps the fact that Mr. Menenberg used this data in opining that Premera's calculation of the UCR rate was reasonable and its allowable charges covered the cost of providing services in the region. Dkt. 149-1 at 21-23. In performing analysis relevant to the reasonableness of ANTHC's charges, on the other hand, Mr. Menenberg used ANTHC's own data. Dkt. 149 at 1-2.

[9] ANTHC disputes this, but in support cites only Ms. Gambrell's testimony that she did not rely on "averages." Opp. at 22-23. By contrast, Mr. Menenberg rigorously analyzed Ms. Gambrell's work and determined that she did, in fact, compare averages to averages. Dkt. 149 at 6.

[10] ANTHC suggests that the peer group used by Ms. Gambrell is the only reasonable one, but also admits that Ms. Gambrell added one hospital to her analysis "based on Mr. Menenberg's inclusion of that facility in his own expert report." Opp. at 23-24 & n.38.

ANTHC v. PREMERA BLUE CROSS, Case No. 3:12-cv-00065-HRH

ANTHC's Third Motion for Summary Judgment, which is based on the untimely disclosed opinions. Alternatively, Premera requests a Rule 56(d) continuance to allow it to obtain discovery regarding these new expert opinions. In addition, Premera requests that the Court grant its cross-motion for summary judgment and deny ANTHC's Third Motion for Summary Judgment.

DATED this 20th day of March, 2015.

LANE POWELL LLC
Attorneys for Defendant

By  */s/ Gwendolyn C. Payton*

Gwendolyn C. Payton
Alaska Bar No. 0511094
paytong@lanepowell.com
John R. Neeleman
Alaska Bar No. 107706
neelemanj@lanepowell.com
LANE POWELL PC
301 West Northern Lights Boulevard, Suite 301
Anchorage, Alaska 99503-2648
Tel: 907-264-3309
Fax: 907-276-2631

I certify that on March 20, 2015, a copy of the foregoing was served by ECF on:

Richard D. Monkman
dick@sonoskyjuneau.com

Michael Madden
mmadden@bbllaw.com

   /s/ Gwendolyn Payton
100407