IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ALASKA NATIVE TRIBAL HEALTH CONSORTIUM,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>PREMERA BLUE CROSS,<br><br>　　　　　　Defendant.<br>_____<br><br>SOUTHCENTRAL FOUNDATION,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>PREMERA BLUE CROSS,<br><br>　　　　　　Defendant.<br>_____ | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 3:12-cv-0065-HRH<br>　(Consolidated with<br>No. 3:12-cv-0165-HRH) |

O R D E R

Cross-Motions for Partial Summary Judgment

Plaintiff Alaska Native Tribal Health Consortium (ANTHC) moves for partial summary judgment.[1] This motion is opposed,[2] and defendant cross-moves for partial

___

[1]Docket No. 133.

[2]Docket No. 152.

-1-

summary judgment.³ Defendant also moves to strike ANTHC's motion for partial summary judgment.⁴ This motion is opposed.⁵ Oral argument was requested and has been heard.

Also pending in this case are defendant's motions to exclude the testimony of Lori Gambrell, Paul Adams, and Peter Ripper⁶ and defendant's motion for a Rule 56(d) continuance should Adams' and Ripper's testimony not be excluded.⁷ For purposes of the instant cross-motions for partial summary judgment and motion to strike, the court assumes without deciding that all evidence submitted by either party in support of the cross-motions for partial summary judgment is admissible.

Facts

ANTHC is a tribal organization that provides health care services to Alaska Natives, American Indians, and other eligible individuals pursuant to Titles I and V of the Indian Self-Determination and Education Assistance Act, 25 U.S.C. §§ 450f-450n, 458aaa-458aaa-18; the Alaska Tribal Health Compact; and plaintiff's Funding Agreement with the Secretary of Health and Human Services. ANTHC co-manages the Alaska Native Medical Center

---

³Docket No. 153.

⁴Docket No. 150.

⁵Docket No. 161.

⁶Docket Nos. 146 & 147.

⁷Docket No. 151.

(ANMC) in Anchorage, Alaska, under this authority. Alaska Natives and American Indians who receive health care services at ANMC are not personally responsible for paying costs associated with their care.

Defendant is Premera Blue Cross. Defendant provides health insurance to some of the individuals who obtain health care services at ANMC. From 2001 through 2011, ANTHC and defendant had a contract which provided the rates which defendant agreed to pay for the health care services that ANTHC provided to defendant's insureds. That contract was terminated by ANTHC on April 15, 2011, as a consequence of a dispute between the parties over ANTHC's use of Guardian Flight for air ambulance services.

ANTHC commenced this action on March 27, 2012. ANTHC alleges that defendant is not paying it in accordance with Section 206 of the Indian Health Care Improvement Act, 25 U.S.C. § 1621e. The only remaining claim in this action is Count 3 of ANTHC's first amended complaint, which deals with defendant's post-contract payments to ANTHC. In Count 3, ANTHC seeks to

> recover from Premera the difference between the actual amounts it paid to ANTHC and ANTHC's reasonable charges billed for health care and services provided to Premera's insureds or, if Premera paid any other nongovernmental provider or reimbursed any individual at a higher rate for similar health care and services, the difference between that amount and the actual amounts Premera actually paid

> ANTHC, including all charges that Premera refused or failed to pay entirely....[8]

The court has held that Section 206 requires defendant to pay ANTHC "the higher of its reasonable billed charges or the Alaska UCR rate."[9] ANTHC contends that since April 16, 2011, defendant has failed to pay it according to Section 206 because defendant is paying it less than its billed charges, which ANTHC contends are reasonable.

ANTHC now moves for summary judgment that its billed charges are reasonable. Defendant cross-moves for summary judgment that ANTHC's billed charges are not reasonable, or in the alternative, that it has paid ANTHC in accordance with the Alaska UCR rate, which defendant contends ANTHC has admitted is usually higher than ANTHC's billed charges.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In

---

[8]First Amended Complaint at 7, ¶ 19, Docket No. 10.

[9]Order re Motion for Judgment on the Pleadings at 13, Docket No. 73.

deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

As an initial matter, defendant moves to strike ANTHC's third motion for partial summary judgment because ANTHC relies on untimely disclosed expert opinions in support of this motion. As noted above, the court is assuming for purposes of the instant cross-motions for summary judgment and motion to strike that all submitted evidence is admissible. Thus, defendant's motion to strike ANTHC's third motion for partial summary judgment is denied.

Turning then to the merits of the instant cross-motions for partial summary judgment, ANTHC first argues that defendant has never and cannot now dispute the reasonableness of ANTHC's billed charges. In support of this argument, ANTHC cites to defendant's response to ANTHC's interrogatory that asked if defendant contended that ANTHC's billed charges were not reasonable. Defendant responded by quoting the Alaska UCR regulation because defendant took the position that Section 206 only required it to

pay ANTHC the Alaska UCR rate.[10] After the court rejected defendant's position, ANTHC asked defendant if its position had changed and defendant stated that it would supplement its response with expert witness reports.[11] ANTHC contends, however, that defendant has never done so and when defendant's expert, Todd Menenberg, was deposed, he testified that he was not asked to analyze whether ANTHC's charges were reasonable.[12]

As defendant is quick to point out, however, Menenberg would testify that ANTHC's rates are not reasonable, in part because "other, non-Premera insurance companies do not treat ANTHC's billed charges as reasonable amounts for actual payment."[13] In short, defendant has and does contest the reasonableness of ANTHC's billed charges.

Defendant then argues that it is entitled to summary judgment on Count 3 because ANTHC has conceded that its billed charges are almost always lower than the Alaska UCR rate and because there is no dispute that defendant has paid ANTHC in accordance with

---

[10]Premera Blue Cross's Responses to Plaintiffs' First Discovery Requests at 15-16, Exhibit 6, Plaintiffs' Memorandum in Support of Third Motion for Summary Judgment, Docket No. 134.

[11]Exhibit 7, Plaintiffs' Memorandum in Support of Third Motion for Summary Judgment, Docket No. 134.

[12]Deposition of Todd Menenberg at 29:23-30:2, Exhibit 8, Plaintiffs' Memorandum in Support of Third Motion for Summary Judgment, Docket No. 134.

[13]Declaration of Todd D. Menenberg at 3, ¶ 15, Docket No. 149.

the Alaska UCR rate. Defendant points out that in ANTHC's memorandum in support of its instant motion for partial summary judgment, ANTHC stated that "ANTHC's billed charges to Premera are almost always lower, for both inpatient and outpatient services, than the 80th percentile of similar charges billed by peer hospitals. This is the 'Alaska UCR' rate that Premera agrees is <u>de jure</u> 'reasonable' under Rule 206."[14] Defendant argues that if ANTHC's reasonable billed charges are "almost always" lower than the Alaska UCR rate, then ANTHC would be entitled to be paid the Alaska UCR rate because it is higher than ANTHC's reasonable billed charges. Because defendant insists that it has paid ANTHC according to the Alaska UCR rate, defendant contends that it is entitled to summary judgment on Count 3.

This argument fails because even if ANTHC has conceded that its billed charges are almost always lower than the Alaska UCR rate, which the court is not convinced it has,[15] there is no evidence in the record that defendant has paid ANTHC according to the Alaska UCR rate. Menenberg opines that defendant's "methodologies for reimbursing ANMC

---

[14]Plaintiffs' Memorandum in Support of Third Motion for Summary Judgment at 3, Docket No. 134 (footnotes omitted).

[15]Even if ANTHC's billed charges are lower than the Alaska UCR rate, ANTHC seeks to be paid its reasonable billed charges because it believes that it will be entitled to a larger payment if it is paid its reasonable billed charges. The court has held that cost-sharing amounts cannot be deducted from ANTHC's billed charges but that it is likely that cost-sharing amounts could be deducted from the Alaska UCR rate.

represent a reasonable approach to implement 3 AAC 26.110"[16] but he never opines that defendant paid ANTHC according to the Alaska UCR rate. In prior motion practice, defendant cited to a declaration from Rich Maturi, its senior vice-president, as evidence that it had paid ANTHC according to the Alaska UCR rate, but Maturi's declaration does not say that. In addition, Menenberg has opined that defendant failed to "update the UCR calculations every six months"[17] as required by law, which at least suggests that defendant's payments to ANTHC might not have always been in accordance with the Alaska UCR rate. Thus, even assuming that the Alaska UCR rate is generally higher than ANTHC's billed charges, defendant is not entitled to summary judgment on Count 3 based on its contention that it has paid ANTHC according to the Alaska UCR rate.

Turning then to the primary question presented here, namely whether ANTHC's billed charges are reasonable, courts have consistently found that the "'reasonableness of charges inquiry requires individual considerations....'" Eufaula Hosp. Corp. v. Lawrence, 32 So.3d 30, 45 (Ala. 2009) (quoting Howard v. Willis-Knighton Med. Ctr., 924 So.2d 1245, 1263 (La. Ct. App. 2006)). As one court noted, "[a] thorough review of the case law from Florida and elsewhere leads to the conclusion that no single factor can be used to determine the reasonableness of [a] hospital[']s charges. Rather, several non-exclusive factors are

---

[16]Expert Witness Report at 22, Exhibit A, Menenberg Declaration, Docket No. 149.

[17]Id.

relevant to the inquiry." Colomar v. Mercy Hosp., Inc., 461 F. Supp. 2d 1265, 1269 (S.D. Fla. 2006) (emphasis added). These factors include 1) "an analysis of the relevant market for hospital services", 2) the usual and customary rate the hospital charges, 3) the hospital's internal cost structure, 4) the nature of the services provided,[18] 5) the average payment the provider would have accepted as full payment from third-parties, and 6) the price an average patient would agree to pay for the service at issue.[19] Id.; Howard, 924 So.2d at 1254; Eufaula, 32 So.3d at 45-46.

1. Market Price Analysis

This factor includes consideration of "the rates charged by other similarly situated hospitals for similar services...." Colomar, 461 F. Supp. 2d at 1269. ANTHC has offered evidence that its billed charged are almost always lower, for both inpatient and outpatient services, than the 80th percentile of similar charges billed by peer hospitals. Lori Gambrell, plaintiff's expert, opines that

> the charges billed by [ANTHC] from 2010 to present are reasonable when compared to either [ANTHC's] peer group of four Alaska hospitals[20] or to a hypothetical rate calculated

---

[18]The parties have made no argument as to this factor, presumably because this case involves a wide variety of services.

[19]ANTHC contends, and defendant does not dispute, that this factor has no application here because ANTHC does not charge its patients for services.

[20]ANTHC's peer hospitals are identified as "Providence Alaska Medical Center
(continued...)

>according to the Alaska Division of Insurance regulations, 3 AAC 26.110 ( the '80th percentile' rate). My analysis shows that ANTHC's charges during this period were lower than the 80th percentile of charges by those hospitals for in-patient services and roughly at the 80th percentile for out-patient services.[21]

Although the parties disagree as to whether the comparison for a market analysis should be between actual billed charges or between allowed amounts, Gambrell's testimony suggests that ANTHC's charges are reasonable when compared to what other hospitals are charging.

### 2. Usual and Customary Rate Charged

Defendant argues that ANTHC's usual and customary rates, i.e., its billed charges, are the least important factor because billed charges are almost never fully paid by third parties. Defendant contends that if this factor is given any weight here it would allow ANTHC to unilaterally decide what its reasonable billed charges are.

ANTHC is not arguing that its billed charges are reasonable because those charges are its usual and customary charges. Rather, ANTHC has taken the position that this factor does not apply here because it does not directly charge its patients. In Colomar, there were

---

[20](...continued)
(Anchorage), Alaska Regional (Anchorage), Fairbanks Memorial (Fairbanks), and Central Peninsula General (Soldotna)." Declaration of Peter Ripper (dated August 28, 2013) at 3, ¶ 5, Exhibit C, Opposition to Motion for Judgment on the Pleadings, Docket No. 67.

[21]Expert Report of Lori Gambrell at 1, ¶ 1, Exhibit 2, Plaintiffs' Memorandum in Support of Third Motion for Summary Judgment, Docket No. 134.

allegations that the hospital was charging uninsured patients higher rates than patients with insurance or Medicaid patients and the court concluded that the price charged for the same services to other patients within the same hospital was relevant to the question of reasonableness. Colomar, 461 F. Supp. 2d at 1271-72. Because ANTHC does not charge its patients, this factor has little, if any, relevance in this case.

### 3. Average Payment ANTHC Accepts from Third Parties

Both parties' experts have analyzed ANTHC's EOBs (explanations of benefits)[22] to determine what ANTHC accepts as payment from other insurance companies. Paul Adams, plaintiff's expert, avers that based on his analysis, defendant allowed 72% of ANTHC's billed charges, while Cigna and Meritan allowed 100% and Premera FEHB allowed 94%.[23] Adams also avers that after cost-sharing amounts are deducted and other adjustments are made, Cigna paid 86% of ANTHC's billed charges and Meritan paid 67%, while defendant paid only 47%.[24] ANTHC argues that based on Adams' testimony this factor weighs in favor of finding its billed charges reasonable.

---

[22]In the spring of 2014, in response to a court order, ANTHC produced some 83,000 pages of EOBs, which were used to compare "ANTHC's billed charged submitted to insurance companies other than Premera for services provided to their members with amounts actually paid by such third-party payors for those services." Menenberg Declaration at 2, ¶ 6, Docket No. 149.

[23]Affidavit of Paul A. Adams at 8, ¶ 13, Exhibit 9, Plaintiffs' Memorandum in Support of Third Motion for Summary Judgment, Docket No. 134.

[24]Id. at 8-9, ¶¶ 14-15.

However, defendant's expert avers that

> the EOBs clearly indicate that other, non-Premera insurance companies do not treat ANTHC's billed charges as reasonable amounts for actual payment. In total, the EOBs analyzed contained billed charges of $1,198,955. Of this amount, the insurance companies "allowed" $943,915, which is 79% of the billed amount. Generally, "allowed" charges can be described as the maximum amount that an insurer would consider paying for a medical service or procedure, before excluding any figures for which the insured individual would be responsible (e.g., co-pays and deductibles). After "allowing" $943,915, the insurance companies actually paid $705,235 (after consideration of patient responsibility amounts such as co-pays, co-insurance, and deductibles), which is 59% of the billed amount.[25]

A reasonable fact finder could consider these opinions and the evidence supporting them and conclude that ANTHC's billed charges were unreasonable, but a reasonable fact finder could also conclude ANTHC's billed charges were reasonable based on what other third parties are paying ANTHC.

3. Internal Cost Structure

"In addition to what a hospital charges others for the same services, and what the market charges in general, another relevant factor that emerges from the pertinent case law is the particular hospital's internal cost structure." Colomar, 461 F. Supp. 2d at 1272. "It makes sense to consider a hospital's internal costs in determining whether the hospital's charges are reasonable because such evidence might account for different prices that would

---

[25]Menenberg Declaration at 3-4, ¶ 15, Docket No. 149.

not be fairly reflected in a simple comparison to other hospitals in the market." Id. "That is, if a hospital has additional, atypical internal costs compared to others in the market, then higher prices might still be reasonable even though those rates exceed the market price." Id.

ANTHC argues that ANMC has unique "internal factors" that weigh in favor of finding its billed charges reasonable. These factors include 1) that ANMC is the trauma center and tertiary care facility for the seven hospitals and roughly 260 village and urban health clinics that make up the Alaska Tribal Health network, which ANTHC contends means that its patients suffer the highest health disparities of any ethnic group in Alaska and are disproportionately likely to be uninsured, and 2) that ANMC is the only Level II Trauma Center in Alaska, which ANTHC contends means it handles the worst (and most expensive) injury cases. ANTHC argues that these internal factors explain why its RCC (ratio of cost to charge) is higher than its peer hospitals. In 2011, ANTHC's RCC was 40.5%, Alaska Regional's was 24%, Central Peninsula's was 51%, Fairbanks' was 53%, Mat-Su Regional's was 25% and Providence's was 31%.[26]

A reasonable fact finder considering this evidence might find that it weighed in favor of finding ANTHC's billed charges reasonable, but a reasonable fact finder could also find that ANTHC's RCC indicates that ANTHC's billed charges are not reasonable.

---

[26]Menenberg Deposition at 54:2-57:6, Exhibit 8, Plaintiffs' Memorandum in Support of Third Motion for Summary Judgment, Docket No. 134.

4. Commercial Reasonableness

ANTHC argues that its billed charges should be considered reasonable because they have been determined using a process that is commercially reasonable, prudent, and equitable. ANTHC contracts with PARA to develop its chargemaster. ANTHC contends that PARA's pricing recommendations are conservative, follow best industry practices and are in line with ANTHC's guiding philosophy that its charges should be fair, equitable, and at the lower end of the Anchorage and Alaska hospital charge spectrum.

Defendant, on the other hand, argues that its use of the UCR rate to pay ANTHC is commercially reasonable. Menenberg opines that "Premera's methodologies for reimbursing ANMC represent a reasonable approach to implement 3 AAC 26.110."[27] Menenberg also compared defendant's inpatient and outpatient allowable charge rates to the estimated cost per unit for each medical service in Anchorage. Menenberg's comparison revealed that "Premera's April 2011 inpatient allowable charges were between 137% and 652% of the estimated cost for providing the inpatient medical service at a peer group of hospitals" and that "Premera's April 2011 outpatient allowable charges were between 133% and 464% of the estimated cost for providing the outpatient medical service at a peer group of hospitals."[28] Menenberg thus opines that "Premera's inpatient allowable

---

[27]Expert Witness Report at 22, Exhibit A, Menenberg Declaration, Docket No. 149.

[28]Id. at 15 & 22.

charges are more than adequate to cover the cost of providing inpatient medical services in the region" and that "Premera's outpatient allowable charges are more than adequate to cover the cost of providing outpatient medical services in the region."[29]

Again, a reasonable fact finder considering the foregoing evidence might conclude that this factor weighs in favor of finding ANTHC's billed charges reasonable, but a reasonable fact finder could also conclude the opposite.

### Conclusion

Based on the foregoing, defendant's motion to strike ANTHC's third motion for partial summary judgment is denied,[30] as are ANTHC's third motion for partial summary judgment[31] and defendant's cross-motion for summary judgment.[32]

DATED at Anchorage, Alaska, this 2nd day of July, 2015.

/s/ H. Russel Holland
United States District Judge

---

[29]Id. at 22.

[30]Docket No. 150.

[31]Docket No. 133.

[32]Docket No. 153.