IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ALASKA NATIVE TRIBAL HEALTH )
CONSORTIUM, )
 )
                        Plaintiff, )
 )
  vs. )
 )
PREMERA BLUE CROSS, )
 )
                        Defendant. )
_____)
 )
SOUTHCENTRAL FOUNDATION, )
 )
                        Plaintiff, )    No. 3:12-cv-0065-HRH
 )    and
  vs. )    No. 3:12-cv-0165-HRH
 )    (Consolidated)
PREMERA BLUE CROSS, )
 )
                        Defendant. )
_____)

O R D E R

Motion to Exclude Testimony of Expert Witnesses

Defendant moved to exclude the testimony of two of plaintiff's expert witnesses.[1] This motion was opposed.[2] After hearing oral argument, the court denied the motion on the record. What follows is a brief order explaining the court's denial of the motion.

---

[1]Docket No. 191.

[2]Docket No. 203-1.

-1-

Background

Plaintiff ANTHC alleges that defendant Premera Blue Cross is not paying it in accordance with Section 206 of the Indian Health Care Improvement Act, 25 U.S.C. § 1621e. The court has held that Section 206 requires defendant to pay ANTHC "the higher of its reasonable billed charges or the Alaska UCR rate."[3] ANTHC contends that since April 16, 2011, defendant has failed to pay it according to Section 206 because defendant is paying it less than its billed charges, which ANTHC contends are reasonable. In support of its contention that its billed charges are reasonable, ANTHC has disclosed reports from two experts, Peter Ripper and Paul Adams. Defendant moved to exclude the expert testimony of Ripper and Adams.

Discussion

Federal Rule of Evidence 702 governs the admissibility of expert testimony. "Expert testimony is admissible pursuant to Rule 702 if it is both relevant and reliable." Elsayed Mukhtar v. Calif. State University, Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002). "What is relevant depends on what must be proved[.]" Primiano v. Cook, 598 F.3d 558, 567 (9th Cir. 2010). As for reliability, when, as here, the testimony at issue is non-scientific, "the 'Daubert factors (peer review, publication, potential error rate, etc.) simply are not applicable" because "'reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it.'" Hangarter v. Provident Life and

---

[3]Order re Motion for Judgment on the Pleadings at 13, Docket No. 73.

Acc. Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004) (quoting United States v. Hankey, 203 F.3d 1160, 1169 (9th Cir. 2000)). The court may also consider other factors such as "whether an expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion or whether an expert has adequately accounted for obvious alternative explanations[.]" Pooshs v. Phillip Morris USA, Inc., 287 F.R.D. 543, 546 (N.D. Cal. 2012) (internal citations omitted).

Defendant did not challenge the qualifications of either Ripper or Adams nor is there any question that Ripper's and Adams' testimony is relevant. The question was whether Ripper's and Adams' testimony is reliable.

Ripper's testimony

In his March 1, 2016 expert report, Ripper opined

> that the charges billed by the Alaska Native Tribal Health Consortium from 2010 to the present are reasonable when compared either to the peer hospitals or to a hypothetical rate calculated according to the Alaska Division of Insurance regulation, 3 AAC 26.110 (the "80th percentile" rate). PARA's[4] analysis shows that ANMC's charges during this period were generally lower than the other hospitals in its peer group, generally lower than the 80th percentile of charges by those hospitals for in-patient services, and roughly at the 80th percentile for out-patient services.[5]

---

[4]Ripper is the President of PARA, which provides "reimbursement, pricing, coding and contract management services to hospitals." Expert Report of Peter A. Ripper at 1, ¶ 1, Exhibit 22, Declaration of Gwendolyn C. Payton, Docket No. 195.

[5]Id. at 2.

Defendant first argues that Ripper's opinion that ANTHC's billed charges were reasonable when compared to the Alaska UCR rate must be excluded as unreliable because Ripper testified that he "never looked at" the UCR rate issue.[6] However, in his rebuttal report, Ripper states that "[a]s I testified in my deposition, I did review the regulation, and have followed its '80th percentile' approach in my analyses."[7] This seemingly contradictory testimony is a subject for cross-examination, but it is not a sufficient reason for excluding Ripper's testimony.

Defendant next argues that Ripper's reasonableness opinion is unreliable because he calculated the 80th percentile by only using the charges of the peer hospitals and not including plaintiff's charges in that calculation. But, as plaintiff points out, Ripper has re-run his analysis to include plaintiff's charges in the computation of the 80th percentile."[8] This is not a sufficient basis for excluding Ripper's testimony.

Defendant next argues that Ripper's reasonableness opinion is unreliable because it is nothing more than a vague conclusion. Ripper opines that plaintiff's billed charges are <u>generally</u> lower than the 80th percentile of what the peer hospitals charged for in-patient services and <u>roughly</u> equal to the 80th percentile of what peer hospitals charged for out-

---

[6]Rule 30(b)(6) Deposition of Peter A. Ripper at 52:8-9, Exhibit 24, Payton Declamation, Docket No. 195.

[7]Rebuttal Report of Peter A. Ripper at 2, ¶ 3, Exhibit 2, [Corrected] Opposition to Motion to Exclude Expert Testimony, Docket No. 203-1.

[8]<u>Id.</u> at 3.

patient services. Defendant argues that nothing in the Alaska UCR regulation suggests that charges should be evaluated on a "general" basis.

Given the nature of the parties' disagreements and the numerous rate comparisons, Ripper's use of the word "generally" or "roughly" does not render his reasonableness opinion unreliable.

Defendant next argues that Ripper's reasonableness opinion is unreliable because the peer hospitals that Ripper uses for his comparisons were selected by plaintiff.[9] But, there is no evidence that plaintiff "cherry-picked" the peer hospitals or that those hospitals were not fairly representative of the area. Thus, the fact that Ripper relied on plaintiff's identification of the peer hospitals does not render his opinion unreliable.

Defendant next argues that Ripper's reasonableness opinion is unreliable because of the differing methodologies he used in his three expert reports, which resulted in differing results. Defendant contends that Ripper "changed methodologies between his first analysis (August 2013) and his second analysis (September 2014)" and although he used the same methodology for his second and third analyses, "he replaced many of the DRG and HCPCS codes he used for comparative purposes, without explanation."[10]

The court is not convinced that Ripper's methodology changed from the first report to the second report. After review of Ripper's explanation of his methodology in connection

---

[9] Ripper Deposition at 51:7-15, Exhibit 24, Payton Declaration, Docket No. 195.

[10] Supplemental Rebuttal Expert Witness Report at 24, Exhibit 11, Payton Declaration, Docket No. 195.

with both the first and second reports,[11] it appears that in both instances, Ripper used the same methodology to compare plaintiff's billed charges to those of the peer hospitals. But, as defendant points out, Ripper's results have certainly changed from report to report and he has used different data in each report. This does not, however, render Ripper's opinions unreliable because his explanation as to why the data changed over time are plausible.[12] While Ripper's differing results may go to the weight a fact finder will give his testimony, they do not require exclusion of his testimony.

Defendant next argues that Ripper's reasonableness opinion is unreliable because he only compared plaintiff's charges to the peer hospitals' charges and did not analyze any of the other factors the court has identified as relevant to the reasonableness inquiry. In an earlier order, the court identified six factors that may be relevant to the question of whether a hospital's charges are reasonable: 1) an analysis of the relevant market for hospital services, 2) the usual and customary rate the hospital charges, 3) the hospital's internal cost structure, 4) the nature of the services provided, 5) the average payment the provider would have accepted as full payment from third parties, and 6) the price an average patient would

---

[11]Declaration of Peter A. Ripper (dated August 28, 2013) at 2, ¶ 4, Docket No. 67-3 and Affidavit of Peter A. Ripper (dated September 15, 2014) at 3-5, ¶¶ 4-7, Exhibit 1, Plaintiffs' Memorandum in Support of Third Motion for Summary Judgment, Docket No. 134.

[12]Ripper Rebuttal Report at 4-5, ¶¶ 4 & 6, Exhibit 2, [Corrected] Opposition to Motion to Exclude Testimony, Docket No. 203-1.

agree to pay for the service in question. The parties agree that factors 2, 4, and 6 are not relevant here.

Defendant argues that Ripper only considered factor 1 and did not consider factor 5, which defendant contends is the most important of the three relevant factors. But even assuming that Ripper only addressed one of the factors, that would not render his opinion unreliable, although it may impact the weight the fact finder will give his testimony.

Defendant next argues that there are numerous problems with the methodology Ripper used to compare plaintiff's billed charges to charges of the peer hospitals, which individually or in combination render Ripper's reasonableness opinion unreliable. Defendant first argues that Ripper did not explain how he selected the DRGs and HCPCS codes that he used in his analysis. In order to compare plaintiff's billed charges to the charges of the peer hospitals, Ripper stated that "[c]laims were filtered to determine the <u>top</u> DRGs" and "the <u>top</u> HCPCS codes submitted by Alaska Native to Premera payers for each year."[13] But, defendant contends that Ripper does not explain what he means by "top", which defendant argues makes it impossible to replicate Ripper's methodology.

Ripper spelled out in his expert reports that he was using the "highest-volume" DRG and HCPCS codes and in his rebuttal report states that "[w]e have consistently looked at ANTHC's highest-volume in-patient and out-patient services (the 'top' services DRGs and

---

[13]Exhibit 1 to Expert Report of Peter A. Ripper, Exhibit 1 at 32-33, [Corrected] Opposition to Motion to Exclude Expert Testimony, Docket No. 203 (emphasis added).

HCPCs)."[14] It is not difficult to understand what "highest-volume" means. This is not a reason to exclude Ripper's testimony.

Secondly, defendant argues that the methodology that Ripper used is unreliable because he compared plaintiff's average charges with the 80th percentile of the peer hospitals' charges, which defendant's expert opines "is mathematically a generous way of determining what is 'reasonable'...."[15] This argument goes to the weight a fact finder would give Ripper's testimony and not to the admissibility of his testimony.

Third, defendant contends that in many of his comparisons, Ripper used a very low volume of ANMC occurrences, which defendant's expert opines "can result in distortions and misleading 'averages'...."[16] This argument also goes to the weight a fact finder would give Ripper's testimony rather than the admissibility of his testimony.

Fourth, defendant argues that Ripper's methodology is unreliable because "his inpatient analysis using DRGs compares charges for two widely divergent populations with differing health care characteristics – ANMC's tribal members with Premera insurance compared with the peer hospitals' much older, non-tribal, Medicare population."[17] This

---

[14] Ripper Rebuttal Report at 5, ¶ 6, Exhibit 2, [Corrected] Opposition to Motion to Exclude Testimony, Docket No. 203-1.

[15] Supplemental Rebuttal Expert Witness Report at 20, Exhibit 11, Payton Declaration, Docket No. 195.

[16] Id.

[17] Id.

argument goes to the weight a fact finder would give Ripper's testimony and not the admissibility of his testimony.

Fifth, defendant argues that Ripper failed to adjust for revenue code differences when doing his comparison, which defendant's expert opines "leads to erroneous results."[18] This too is an argument that goes to the weight a fact finder would give Ripper's testimony rather than the admissibility of that testimony.

Sixth, defendant argues that Ripper has "grossly overstate[d] the number of ANMC billings for a particular code, because many of the ANMC bill lines are simply reversals of other bill lines, making them net out to zero."[19] Defendant argues that by overstating the number of bill lines and factoring that inflated number in to his calculation of the average charge amount, Ripper has understated the average charge amount. This is yet another argument that goes to the weight a fact finder would give Ripper's testimony rather than the admissibility of that testimony.

Seventh, defendant argues that Ripper commingled ANMC physician charges and hospital charges when calculating the average HCPCS charge for plaintiff but then only used hospital charges for the peer hospitals. Defendant's expert opines that "[c]ombining both the physician and hospital charges for ANMC has the effect of greatly reducing the 'average' charge at ANMC for a particular HCPCS code, thus making it appear that ANMC's charges

---

[18] Id.

[19] Id. at 25.

are much less than its peers' charges (since the peers' data does not include physician charges."[20] Again, this is an argument that goes to the weight a fact finder would give Ripper's testimony and not to the admissibility of that testimony.

### Adams' Testimony

Adams has been retained by ANTHC

> to comment on the reasonableness of ANTHC's billed charges relative to Premera's payment practices, and to calculate the amount ANTHC is entitled to recover based on the difference between its billed charges and the amounts paid by Premera.[21]

Adams calculated ANTHC's damages "by subtracting the total amount paid by Premera from the total amount of charges billed by ANTHC."[22] As to the reasonableness of ANTHC's billed charges, Adams opined

> that ANTHC's billed charges are reasonable and satisfied the provisions outlined in Section 206. Premera's handling of claims under the FEHB Plan provides further support because Premera has historically calculated an allowed amount of 95% for these specific claims. This is evidence that Premera considers ANTHC charges reasonable.[23]

---

[20]Id. at 26.

[21]Second Expert Witness Report at 2, Exhibit 23, Payton Declaration, Docket No. 195.

[22]Id. at 5.

[23]Id. at 9, ¶ 4.

Defendant first argues that Adams' opinion as to plaintiff's damages should be excluded because it is based on Ripper's conclusion that plaintiff's billed charges are reasonable and Ripper's testimony is unreliable.

But, as discussed above, the court does not view Ripper's opinions as unreliable. Thus, Adams' damages calculation is not excludable simply because he relied on Ripper's reasonableness opinions.

Defendant next argues that Adams' damages opinion should be excluded as unreliable because Adams has included plaintiff's bills to defendant for treating members enrolled in the Blue Cross Federal Employee Program (FEP). Defendant contends that errors in the claims processing system for these insureds have resulted in excess payments to plaintiff, that FEP "has demanded repayment from ANTHC" and that "ANTHC has begun the process of refunding the overpayments to FEP."[24] By including these payments in his damages opinion, defendant argues that Adams has overstated plaintiff's damages.

The court is not persuaded, however, that the fact that Adams included FEP claims in his analysis is a sufficient reason to exclude his testimony.

In its reply brief, defendant raises a new reason for excluding Adams' opinion. Defendant argues that Adams' opinion should be excluded because the grounds on which he criticizes the analysis of defendant's expert are legally meritless. Because this is a new

---

[24]Declaration of Matt Beales at 2, ¶ 4, Docket No. 192.

argument raised for the first time in a reply brief, the court declines to consider this argument.

## Conclusion

Based on the foregoing, the court denied defendant's motion to exclude the testimony of Ripper and Adams.

DATED at Anchorage, Alaska, this 18th day of January, 2017.

/s/ H. Russel Holland
United States District Judge